JOHN MORRISON, APPELLANT, VS. JOHN L. McKINNON, APPELLEE.

1. Though a court make an incorrect ruling as to the admissibility of testimony, if it be afterwards corrected, and such testimony admitted in time to give the party all the benefit of the facts sought to be proved, such erroneous ruling will not be ground for granting a new trial.

2. It is discretionary with a court whether to compel a party to join in demurrer to evidence.

3. Where there is testimony tending to prove the concurrent understanding and intention of the parties as to the particular terms of a parol agreement, and the jury have passed upon it, the verdict will not be disturbed, particularly where the charge of the court was proper.

4. The statute of usury, Th. Dig., 234, §1, refers to contracts of the loan of money or things of value for a specified interest or compensation for their use, *according to their value;* and such contracts as provide for a certain uncontingent repayment of the principal sum or value, and a certain uncontingent rate *in value* for its use; and unless a contract is in violation of this principle, it does not come within the prohibition of the statute; and therefore,

5. A contract to repay one and a half bushels of corn, within a year, for one bushel advanced, is not within the prohibition of the statute of usury, because the value of the article is fluctuating, and the increased quantity may not be equal in money value, at the time of payment, to the value of the principal or thing loaned at the time of the loan.

6. Relationship, by affinity to one of the parties within the ninth degree, is, by the common law, a ground of challenge of a juror. But where a juror is called who is " first cousin to plaintiff's wife's mother," and the defendant being present makes no objection, and does not afterwards show that *he* was unaware of the relationship, (though his counsel does make an affidavit to that effect,) and it does not appear that the persons through whom such relationship existed are still living, such cause is not sufficient to set aside a verdict, especially when there is no evidence that the juror is in fact influenced from that cause.

Appeal from Walton Circuit Court.

The case is fully stated in the opinion of the court, to which reference is made.

*McLean and McLean*, for Appellant.

*D. L. McKinnon*, for Appellee.

RANDALL, C. J., delivered the opinion of the court:

John L. McKinnon, Appellee, sued Morrison, Appellant, in a justice's court in 1867 upon an account for fifty-seven bushels of corn at $2.25 per bushel, and for hauling corn $6, giving a credit for thirty bushels of corn, claiming a balance due of $66.70.

On the trial, judgment was rendered for the plaintiff, and defendant appealed to the circuit court. On the 8th of April, 1868, the cause was tried in the circuit court, and a verdict rendered for the plaintiff for sixty-eight dollars and sixty-four cents.

The defendant then appealed to this court.

The record shows that Neill L. McKinnon testified on behalf of the plaintiff, that in the spring of 1865 Murdock Morrison, son of defendant, came to plaintiff's place with an open note. Plaintiff was absent, but witness was his agent and read the note, the purport of which was to ascertain whether defendant could get some corn of plaintiff. Witness told the defendant's son that defendant " could get some corn on the same terms he was letting others have it, which was, a bushel then for a bushel and a half to be returned in the fall, and that if his father wanted it he must send after it quickly or it would be gone." The next day witness delivered to defendant thirty-eight bushels of corn, defendant sending his carts therefor. Had refused two dollars per bushel, in specie, for corn, but had refused to sell for money, as he wanted the corn in return, plaintiff not seeing any prospect of raising a crop himself. In the spring of 1866 defendant paid back thirty bushels of corn, delivering it ten miles away. Worth fifty cents per hundred to haul it home. Defendant's counsel asked witness: " What was corn worth at the time defendant received the thirty-eight bushels ?" This question was objected to by plaintiff's counsel, on the ground that the corn was not due until the fall of the year. The court sustained

47

the objection, and defendant excepted to the ruling.   Witness further testified that he wrote no note back to defendant, and did not ask the defendant's son what authority was delegated to him, or if he had any.

A. C. McCallom testified that he was present when defendant's son came to ascertain whether his father could get corn from plaintiff, and heard the first witness tell him that his father " could get corn as others were getting it from him, at a bushel then for a bushel and a half in the fall." Several others got corn there that day on the same terms.   Corn was very scarce.

The plaintiff testified that he had refused two dollars a bushel for it; did not want money, but wanted corn in return.   Defendant paid him thirty bushels of corn in the spring of 1866, but delivered it at a distance from his residence; " but if he was not mistaken defendant promised to pay for the hauling."

Another witness testified that corn was worth $2.25 in the fall of 1865.

On the part of the defendant, Murdock Morrison testified that his father sent him with the note to McKinnon inquiring if defendant could get corn from plaintiff.   Witness had no other authority except to carry the note and inquire if corn could be had. Don't recollect N. McKinnon saying defendant would have to pay a bushel and a half in the fall for a bushel then.   Does not recollect informing defendant that McKinnon said anything, except that he could get corn, and to come after it quickly.

John Morrison, defendant, testified that Murdock Morrison was not his general agent, was not authorized to transact all his business, nor in any particular trade, occupation or property; that in 1865 he sent him with a note to plaintiff inquiring if he could get corn.   Did not contemplate borrowing corn to be paid in the fall.   Intended to pay what it was worth at the time he received it.   Defendant's son on returning said he had delivered the note to Neill McKinnon, who said, tell witness he could get corn, and must come for it quickly.   Did not tell him that he

would have to pay a bushel and a half for a bushel. Did not know that others were getting corn on those terms. Corn was at that time worth one dollar per bushel, and there was plenty of it in the country, &c. The first that witness knew of plaintiff's intention to charge one and a half bushels for one bushel, was after the corn was procured; and to avoid difficulty he had let plaintiff have thirty bushels in the way of payment; when he learned that plaintiff intended to charge one and a half for one bushel, he ceased paying. Paid the thirty bushels when it was worth $2.25. In the spring of 1865 it was worth one dollar.

John L. Campbell testified that corn was worth one dollar in specie in spring of 1865. A. C. Monroe testified that corn was worth $2.25 in the fall of 1865 and spring of 1866.

The testimony being closed, the defendant's counsel *proposed* to demur to the testimony, and plaintiff's counsel refused to join in demurrer. The court ruled that plaintiff could not be required to join in demurrer, and defendant's counsel excepted.

The defendant's counsel asked the court to charge the jury upon several points referred to in his assignment of errors, and took exceptions to the ruling thereon.

The court charged the jury that " if you believe from the evidence the defendant obtained the corn from plaintiff under a special agreement to pay a bushel and a half for a bushel, you will find for the plaintiff [excepted to by defendant]; but to charge the defendant under the special agreement he must have known and assented to it." " If the jury shall find that the defendant had no knowledge of any special agreement, he will be only liable to pay the price at which corn was selling at the time he received it." " If the jury find from the evidence that the defendant has paid all that he was liable to pay, they will find for the defendant."

At defendant's request the court further charged the jury, " If you find from the evidence that Murdock Morrison was a special agent and had no authority to make such a contract, you will find for the defendant."

The defendant's counsel asked the court to charge the jury also that the plaintiff dealt with the witness, Murdock Morrison, at his peril, unless he inquired into his authority as an agent; which the court refused.

The defendant's counsel also asked the court to charge the jury that if a contract was established by which the plaintiff was to receive more than six per cent. interest, the statute of usury was applicable ; the court refused so to charge, and defendant excepted.

After the verdict, defendant's counsel moved for a new trial on the grounds that the verdict of the jury was against the law, and against the evidence and contrary to the charge of the court ; and also upon the ground that one of the jurors was related to the plaintiff by affinity ; and to support this last ground, the record says that the counsel for the defendant made an affidavit that he conducted the selection of the jury, and was not aware that Beck, one of the jurors, was related by affinity to the plaintiff, but he is informed and believes that he was so related ; and the return further states that to the above was attached the affidavit of the plaintiff, that he was a "first cousin of the said juror's wife's mother."

The court refused to grant the motion for a new trial, and exceptions were taken.

The Appellant assigns the following errors :

I. The court erred in sustaining the plaintiff's objection to defendant's proving the value of the corn at the time it was procured.

II. The court erred in ruling that plaintiff's counsel could not be required to join in demurrer to the testimony, after the testimony was closed.

III. In refusing to instruct the jury that " if you believe from the evidence that Neill L. McKinnon, agent of plaintiff, did not inquire into Murdock Morrison's authority, then he dealt with him at his own peril, and you will find for the defendant."

IV. The court erred in refusing to instruct the jury that the

statute of usury in force when the contract was made applies not only to money but to merchandise,     and if they find from the testimony that the plaintiff has loaned defendant corn at the rate of more than six bushels per annum interest on the hundred bushels, it is usury ; and that a contract that defendant should return the corn and interest at the rate of one bushel and a half for a bushel, the interest is usurious, the contract illegal and void, and verdict will be given for defendant.

V. The court erred in refusing to grant a new trial upon the motion of defendant's counsel in the court below ; and for other reasons apparent in the record, the judgment should be reversed.

As to the first assignment of error, it is plain that the inquiry into the value of property sold, without a special contract as to price, must be confined to the value at the time of the sale ; but where a payment is to be made in specific articles, without reference to value, as corn, &c., the inquiry must be as to the value of the article to be delivered at the time appointed for delivery; and the court erred in sustaining the plaintiff's objection to proof of the value at the time of the purchase, the question as to the existence of a special contract being in issue in the case.     But though the court may have erred in refusing to receive the testimony, it seems that the defendant was afterwards permitted to prove the value at the time of the purchase or loan, and thus he had the benefit of the proposed testimony.     Though a court make an incorrect ruling, if it be afterwards corrected in time to give the party all the benefit sought by the testimony offered, such erroneous ruling will not be good ground for granting a new trial.

As to the second assignment of error.     It is discretionary with the court whether to *compel* a party to join in demurrer to evidence.     A demurrer to evidence ought not to be allowed where the party demurring refuses to admit the facts which the other party attempts to prove ; nor where he offers contradictory evidence, or attempts to establish inconsistent propositions.

Young vs. Black, 7 Cranch., 565; Starkie on Ev. ; Ph. Ev., notes, pp. 1008, 1010.

As to the third assignment of error :

It seems from the evidence that McKinnon was disposing of his corn to persons in the community only upon the terms of one bushel and a half, to be delivered at a future day, for one bushel disposed of. The son of the defendant brings the note of the defendant desiring to get some corn. He is told that his father could get it upon the same terms as others, one bushel for a bushel and a half in the fall, if he would send quickly. It is admitted by defendant's son (as well as by defendant himself) that he conveyed so much of this message as related to the sending for it " quickly," and when defendant is asked whether Murdock Morrison was his general agent, he is particular to reply that " he was not authorized to transact *all of his business* in any particular trade, occupation or property." The jury, it seems, from all the circumstances concluded that he was his agent in this purchase.

It appears from the testimony that for particular reasons the business of the people of the county was carried on rather through a system of barter and exchange than purchased by what was then circulating as money, and defendant shows his knowledge that McKinnon was thus disposing of his corn, when he writes to *get* corn, rather than to purchase it, and when he sends at once for it without further inquiry as to the price.

In this case there were many circumstances which were subjects for the consideration of the jury ; the witnesses were examined in their presence, and from the circumstances, they no doubt concluded that the defendant or his authorized agent was fully informed of the terms upon which plaintiff was disposing of his corn, and that he accepted them ; and we are not disposed, in a case of this character, the facts having been passed upon by the jury, under a proper charge by the court as to the law of contracts, to disturb the verdict. See 1 Met., 93 ; 1 Cushing, 89.

The fourth assignment of error is, that the judge refused to

charge that the contract was within the statute against usury, &c.

This statute reads as follows : " No person or persons shall upon any future contract whatever, take, directly or indirectly, for the loan of any money, wares or merchandise, bonds, notes or other commodities whatsoever, above the rate of eight dollars for the loan of one hundred dollars for one year," &c.

Every law must be construed with reference to the subject matter and to its intent.   Was this law relating to the rate of interest to be charged or to be contracted for upon a loan of money, and creating certain penalties for taking more than certain rates for the use of money or things of money value loaned, intended by its framers to so operate as that the owner of a horse worth one hundred dollars should not contract for his loan and use day by day or week by week, at a greater rate than eight dollars per annum ; or that the owner of a wagon should not receive above eight per cent. upon its value for its use ; or that the owners of cattle may not receive for their use the natural increase, or other like cattle, or that the owners of corn may not have in return a portion of its increase, though it be an hundred fold ?

This statute refers to contracts of the loan of money or things of value, and prohibits the taking of a greater rate of interest or compensation for the use of a *certain amount in value,* and whether it be money or goods so loaned, the contract must refer to a certain uncontingent repayment of the principal *sum or value,* and a *certain uncontingent* rate *in value* for its use. (Ord. on Usury, 29, 69, 72).

The distinction to be observed in the character of the two classes of contracts is obvious.   The price or value of merchandise and commodities is fluctuating, as shown by the testimony. Corn in 1865, when purchased or borrowed by the defendant, was worth say one dollar per bushel.   In 1866, it was worth two dollars and a quarter.   If the fact had been reversed, and the price had fallen from two dollars and a quarter to one dollar,

the plaintiff would have made a bad speculation; yet he could not complain, because it was his own proposition.

The construction of the law insisted upon by the defendant would be an observance of the *letter* to the sacrifice of its spirit. "A thing which is within the intention of the makers of the statute, is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute, is *not* within the statute, unless it be within the intention of the makers." Bac. Abr., Stat. I., 5, 10.

Transactions of this character are very common in agricultural communities, and have been the subject of judicial criticism in nearly all the States. In a case requiring an interpretation of the statute of usury in New York, Spencer vs. Tilden, 5 Cowen, 144, which arose upon an agreement to let six cows for four years, the defendant to return twelve cows with calves by their sides, it was proved that the six cows were worth one hundred and fourteen dollars, and that the twelve cows and calves were worth two hundred and four dollars, at the end of the four years, the court says: "The contract was not usurious, though the plaintiff was a very hard and unconscionable creditor. It was uncertain, in 1819, what would be the value of cows in 1823. Here was no negotiation for a loan of money. It was a bargain by which the plaintiff was pretty certain of making a handsome profit, but by which he might lose." And Holmes vs. Wetmore, cited ib., 149, was upon the following agreement: "Aug. 26, 1819. Ebenezer Holmes received of Ezra Wetmore ten ewe sheep, for which I promise to deliver twenty sheep of as good quality, three years from date." On the trial, sheep were proved to be worth one dollar in August, 1822, and judgment was given for plaintiff for twenty dollars damages. Judgment affirmed. In Hamlin vs. Fitch, Kirb. Conn. Rep., 260, the court says: "To bring a contract within the statute, and the mischief it was made to prevent, it must be clearly for the repayment of a *greater value* than the amount of the loan, with an advance thereon at the rate of six per cent. per annum. That it be of a

greater quantity, though of the same kind of article, is not sufficient. A loan of one hundred bushels of salt, for example, in 1783, when it was worth twelve shillings, to repay double the quantity at the end of the year, when it might have been worth but four shillings, would not come within the statute, be the price what it may at the year's end. The contract in this case, though in the form of a loan, was really in the nature of a speculation and bargain of hazard. It depended upon a contingency, to wit, that of depreciation, whether all, or how much of the principal or value loaned, should be repaid, and which of the parties the speculation would ultimately favor, which takes the contract entirely out of the statute." 2 Burr., 891.

The fifth ground of error is that the court refused a new trial upon the defendant's motion, one of the grounds of which was the relationship by affinity between the plaintiff and one of the jurors. No authorities are cited in the appellant's brief, and perhaps the appellant intended to abandon the position. At the common law, relationship within the ninth degree is ground of challenge of a juror, for favor ; and even to the array, where the sheriff who summoned the jury was so connected. But when the parties omit to challenge, strong reasons must be shown for the omission. Here, the appellant's counsel makes affidavit that he was not aware of the relationship when the jury was drawn ; but the appellant himself being present says nothing. Nor do the affidavits show that the parties through whom the relationship once existed are still living. In Cain vs. Ingham, 7 Cowen, 478, the sheriff summoned as a juror "one Clapsaddle, whose father had married the widow of the defendant's brother. Clapsaddle's father died before the trial." A motion being made to set aside the verdict for the incompetency of the juror, and the plaintiff not showing a good excuse for not challenging, the motion was denied. The court say : " It is going too far to say that matter of mere evidence upon a challenge to the juror, matter which is undefined and infinitely diversified and multifarious, shall be a cause for setting aside a verdict, when it

is accompanied with no evidence that the juror is in fact influenced from that cause."

The amount involved in the case at bar is small, and this is probably the last case that may come before this court, originating in a justice's court, yet on account of the industry and zeal of the counsel in preparing and presenting it, as well as the interesting nature of some of the questions raised, it has received as earnest consideration as though the amount had been more important.

The order refusing a new trial, and the judgment, must be affirmed, with costs.