ROBERT L. WALSINGHAM, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. Under the provisions of chapter 5902 of the Laws of Florida, Acts of 1909, page 49, a juror is subject to challenge for cause whose second cousin has married one of the parties to the cause, such juror being related by affinity to such party within the third degree, provided it is affirmatively made to appear that such second cousin of the juror is living at the time of the trial, or, if deceased, that she left issue surviving her at such time.

2. The trial court in the exercise of a sound discretion has the

right to excuse a juror, even though he be qualified, and such ruling will not be disturbed by an appellate court, unless a clear abuse of such discretion is made to appear.

3. Section 11 of the Declaration of Rights in the State Constitution of 1885 guarantees to one accused of crime "the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed," and chapter 5902 of the Laws of Florida, Acts of 1909, page 49, provides that "if it shall appear to the court that the juror does not stand indifferent to the cause, or is otherwise incompetent, another shall be called in his stead for the trial of that cause." This makes the question as to what is an impartial juror largely a judicial one, to be determined by the trial court, upon all the facts and circumstances as they may appear.

4. The policy of the law, in all cases in which jurors are empanelled to try the issue, is to secure men for that responsible duty whose minds are wholly free from bias or prejudice either for or against the accused, or for or against either party in civil cases. The authority of the trial court in superintending the making up of the panel is not limited to a decision of the strict legal qualifications of a juror; it may, in the exercise of a judicial discretion, excuse a juror, who, though not legally disqualified, yet has such relations to one of the litigants as might reasonably fill the other with apprehension as to his fairness.

5. A trial court in empanelling a jury to serve in a particular case should have and has a very extensive and almost unlimited discretion in discharging a person called to serve on the jury, who might, in the opinion of the court, not make a fit and competent person to serve on that jury. But this rule should not be applied in retaining jurors.

6. In criminal cases, whenever, after a full examination, the evidence given upon a challenge leaves a reasonable doubt of the impartiality of a juror, the defendant should be given the benefit of the doubt and his challenge of such juror for cause sustained.

This case was decided by Division A.

Writ of error to the Circuit Court for Washington County.

The facts in the case are stated in the opinion of the court.

*Cook & McRae* and *J. W. Kehoe,* for Plaintiff in Error;

*Park Trammell,* Attorney General, for the State.

SHACKLEFORD, J.—Robert L. Walsingham was indicted for murder in the first degree, tried and found guilty of murder in the second degree, sentenced to the state prison for life, and seeks relief here by writ of error.

The first assignment is based upon the "court's overruling defendant's challenge for cause to the juror, A. W. Potter." We find that the jurors were being examined upon their voir dire, and, upon the examination of A. W. Potter, the following proceedings took place:

"Q. Have you formed or expressed any opinion in this case? A. No sir. Q. Do you know the facts and circumstances of the case? A. No sir, I don't know that I do. Q. Are you related by blood or marriage to the defendant? A. No sir. Q. Have you any bias in his favor or prejudice against him? A. No sir. Q. If taken on this jury could you render a fair and impartial verdict according to the evidence? A. Yes sir. Q. Have you any conscientious scruples against the infliction of capital punishment? A. No sir. Q. Are you related to the deceased? A. Yes sir. Q. What was the relationship? A. His wife was a second cousin of mine. Q. His wife was a second cousin of yours. A. Yes sir.

### CROSS EXAMINATION.

### By Mr. Kehoe.

Q. Are you related by blood or marriage to the deceased? A. By marriage—he married a cousin of mine. Q. Carter did? A. Yes sir. Q. Are you related by blood or marriage to the defendant Washington? A. No sir. Q. Have you heard this case discussed any since it occurred? A. Very little. Q. Have you heard it discussed any by the witnesses? A. No, sir. Q. Were you present at the preliminary examination—any part of it? A. No sir. Q. Have you any bias for or prejudice against this defendant? A. None at all. Q. If taken upon this jury do you think that you could render a fair and impartial trial according to the evidence you hear? A. Yes, sir. Q. Where do you live, Mr. Potter? A. About five miles southeast of this place.

Mr. Kehoe: We challenge the juror for cause—his relationship by marriage to the deceased.

The Court: Let's see, what is the rule—Carter's wife was his second cousin, as I understand it. He will not be excused. I don't think his relationship to the deceased would disqualify him under the statute.

Defendant excepts."

Section 3905 of the General Statutes of 1906 provides that "the qualifications of jurors in criminal cases shall be the same as their qualifications in civil cases." Paragraph 2 of Section 1492 of the General Statutes of 1906, relating to the challenge of jurors, was amended by chapter 5902 of the Laws of Florida, Acts of 1909, page 49, so as to read as follows:

"Sec. 2. *For cause.*—The court shall, on motion of each party in any suit, examine on oath any person who is called as a juror therein to know whether he is related to

either party, or to the attorney of either party within the third degree or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; or is an employee or has been an employee of either party to the cause of action within thirty days previous to the trial thereof, and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that the juror does not stand indifferent to the cause, or is otherwise incompetent, another shall be called in his stead for the trial of that cause. It shall be grounds of challenge for cause if any person called as a juror has served as a juror at any other term within one year, and when the nature of any case, civil or criminal, requires a knowledge of reading, writing and arithmetic, or either, to enable a juror to understand the evidence to be offered on the trial, it shall be cause of .challenge if he does not possess such qualifications, to be determined by the judge presiding at the trial."

Under the provisions of this statute, it is clear that the juror was related by affinity to the deceased within the third degree, the deceased having married the second cousin of the juror. Page v. State, 22 Tex. App., 551, 3 S. W. Rep. 745. But it does not affirmatively appear that the wife of the deceased was living at the time of the trial or that she left issue surviving her. On the contrary, it would seem that we might well infer from the examination and cross-examination of the juror that the wife of the deceased was dead, as she was referred to in the past tense. The trial judge apparently was under this impression, since he stated, "Carter's wife *was* his second cousin, as I understand it." If the wife of the deceased was not living at the time of the trial, or some of her issue, the juror was not disqualified.   Morrison v. McKinnon, 12 Fla., 552; Gillespie v. State, 168 Ind., 298, 80 N. E. Rep.,

829; Trout v. Drawhorn, 57 Ind., 570; Miller v. State, 97 Ga., 653, 25 S. E. Rep., 366; Stringfellow v. State, 42 Tex. Cr. App., 588, 61 S. W. Rep., 719. It may well be questioned as to whether or not, under our statute, even if it had affirmatively appeared that the wife of the deceased was living at the time of the trial, if that fact would have rendered the juror disqualified. In other words, it is not clear from the language of the statute that, upon the trial of a person for murder, the relationship of a juror to the deceased, either by consanguanity or affinity, within the prescribed degree, would necessarily render such juror disqualified or incompetent, since the deceased could hardly properly be regarded as a party. Upon this point the authorities are not in entire harmony and some difference of opinion prevails among the members of this court. In a number of jurisdictions the law-making body has settled the question by expressly providing that the relationship of a juror to the deceased or injured party, as the case might be, within the prescribed degree, would render such juror disqualified. It is not necessary for us to decide this point, since it is not really properly before us, for the reason already given. It also affirmatively appears that this juror did not form one of the jurors who tried the defendant, consequently such juror must have been peremptorily challenged. This assignment has not been sustained.

The second assignment is based upon the overruling of the defendant's challenge for cause of the juror, J. B. Elliott, and the third assignment is based upon the overruling of the defendant's peremptory challenge to such juror. Upon the examination of this juror upon his voir dire, the following proceedings were had:

"Q. Have you formed or expressed any opinion in this case? A. Well, yes, I guess I have, like a great many others hearing the reports about it. Q. What have you

heard, was that just remarks about the case? A. I don't know—I could not say—I don't know who the witnesses are—I could not say. Q. Is that opinion which you have formed a fixed opinion? A. Yes, sir. Q. If taken on this jury, could you render a verdict solely from the evidence which you hear from the witnesses? A. Yes, sir. Q. Would you entirely disregard all you have heard before? A. Yes, sir. Q. Are you related by blood or marriage to the defendant? A. Not that I know of. Q. Are you acquainted with him? A. No, sir. Q. Have you any bias in his favor or prejudice against him? A. None at all. Q. If taken on the jury, could you give him a fair and impartial trial according to the evidence? A. Yes, sir. Q. Have you any conscientious scruples against the infliction of capital punishment? A. No sir.

## CROSS EXAMINATION.

### By Mr. Kehoe.

Q. Are you related by blood or marriage to the deceased? A. No, sir. Q. You knew the deceased? A. Yes, sir. Q. Are you acquainted with the Carter family? A. Yes, sir. Q. With Mr. Yates? A. Yes, sir, I am acquainted with all of the Yates. Q. Have you ever heard Mr. Yates or either of the Carter family discussing this case? A. Yes, sir. Q. Which one? A. I talked with the old man Carter about it. That is the reason I said I didn't know whether — — — — Q. Is that Sampson Carter? A. Yes, sir. Q. Did he purport to tell you how it occurred? A. Well, he told some little about it. I don't remember—I don't think that he said he saw the thing or not. Q. Did you talk to any of the other Carters about it? A. Not that I remember. Q. Did you talk to Mr. Yates about it. A. Not that I remember. Q. Or Mr.

Rodgers? A. No, sir. Q. Mr. Barfield? A. No, sir. Q. Mr. Pritchard? A. No, sir. Q. From what you did talk to Mr. Carter and others, did you form an opinion as to the guilt of the defendant? A. Yes, sir. Q. Have you still got that opinion with you? A. Yes, sir. Q. If taken on this jury as a juror and Mr. Carter was called as a witness and other witnesses and on being called as a witness he would make the same statement before the jury that he made heretofore would the fact that he made the same statement twice give strength to his testimony? A. I suppose it would, yes sir. Q. If Mr. Carter, or any other witness was called and was to testify and if he should make a different statement than what he did before to you, would that affect his testimony as to credibility before you as a witness, if he made a different statement than before? A. Yes, sir.

Mr. Kehoe: We challenge the juror for cause.

The Court: I understood you to say in answer to Mr. Wilson's question a moment ago, that you could go into the jury box, after hearing the testimony of the trial here, you could render from that testimony, without being influenced at all by anything you previously heard, or by any opinion you previously heard, a verdict according to the evidence—is that correct? A. Yes, sir.

The Court: Are you sure you could do that? A. I will explain; Mr. Kehoe asked me if the evidence was changed would that have an effect on the evidence that I had already heard. I said it would.

The Court: In other words, if the evidence was different from what you already heard—you would render a verdict on the evidence sworn to here? A. Yes, sir.

The Court: I think he is qualified.

Mr. Kehoe: I don't think — — —·— — —

The Court: I think he is qualified.

Defendant excepts.

(Later in the jury examination).

Mr. Kehoe: We challenge J. B. Elliott, peremptorily.

The Court: You have exhausted your challenges. Challenge denied.

Defendant excepts."

We have repeatedly held that the trial court in the exercise of a sound discretion has the right to excuse a juror, even though he is qualified. Mathis v. State, 45 Fla., 46, 34 South. Rep., 287; Williams v. State, 45 Fla., 128, 34 South. Rep., 279; Peaden v. State, 46 Fla., 124, 35 South. Rep., 204. Also see Dorman v. State, 48 Fla., 18, 37 South. Rep., 561, and Hopkins v. State, 52 Fla., 39, 42 South. Rep., 52. The discussion in 24 Cyc., 273, concerning the relationship or business connection of jurors, will also be found useful. The statute gives this discretionary power to the trial judge, since it is expressly stated therein "if it shall appear to the court that the juror does not stand indifferent to the cause, or is otherwise incompetent, another shall be called in his stead for the trial of that cause." This statutory provision is in full accord with section 11 of the Declaration of Rights in the State Constitution of 1885, which guarantees to one accused of crime "the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed." In construing a similar constitutional provision, the Supreme Court of Indiana held in Block v. State, 100 Ind., 357, that "The question, what is an impartial juror, is largely a judicial question, in view of the Constitution which in a criminal case guarantees to the defendant a trial by an impartial jury, and hence section 1793, R. S. 1881, so far as it enumerates causes of challenge, excluding all others, is not necessarily conclusive upon the courts." This is a well reasoned case. To the same effect is Gaff v. State, 155 Ind., 277, 58 N. E. Rep., 74, 80 Amer. St. Rep., 235; State v.

Miller, 156 Mo., 76, text 84, 56 S. W. Rep., 907. An instructive note will also be found on pages 744 to 760 of 9 Amer. St. Rep. treating of the competency and qualifications of jurors. Also see Thompson & Meriam on Juries, section 175. It was held in Glasgow v. Metropolitan Street R. Co., 191 Mo., 347, 89 S. W. Rep., 915 that "The authority of the trial court in superintending the making up of the panel, is not limited to a decision of the strict legal question of the qualification of a juror; it may, in the exercise of a judicial discretion, excuse a juror, who, though not legally disqualified, yet has such relations to one of the litigants as might reasonably fill the other with apprehension as to his fairness." In State v. Hatfield, 48 West Va., 561, 37 S. E. Rep., 626, it was held that "The object of the law is, in all cases in which juries are empanelled to try the issue, to secure men for that responsible duty whose minds are wholly free from bias or prejudice either for or against the accused, or for or against either party in civil cases." We would also refer to the 3rd headnote in that case, which is as follows:

"A juror who said the talk he had had about the case had made an impression on his mind as to the guilt or innocence of the prisoner, and he was still of the same opinion as to such guilt or innocence, and was asked, 'Do you feel that you could sit here as a sworn juror and decide the case according to the evidence adduced in open court, absolutely disregarding what you may have heard?' answered, 'I possibly might, if the evidence was entirely different from what I have heard.' Held not error to excuse him from the panel." In State v. Miller, 29 Kans. 43, it was held that "A trial court in empanelling a jury to serve in a particular case should have and has a very extensive and almost unlimited discretion in discharging a person called to serve on the jury, who might, in the opinion of the court, not make the fittest or most competent

person to serve on that jury.  But this rule should not be applied in retaining jurors." This case is well in point. As was well said in Richardson v. Planters' Bank, 94 Va., 130, text 134, 26 S. E. Rep,. 413, "Confidence in the trial by jury depends upon the purity of the tribunal, and the fairness of its decisions. To secure this, the trial must be by impartial men.   Purity of. the tribunal is the watchful care of the law, and 'it has guarded against the influence of those passions most likely to pervert the judgment of the jurors in deciding upon the conduct and controversies of their fellow-men.' If the juror does not stand indifferent to the cause, he is not competent. If he has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law." Rhea v. State, 63 Neb., 461, 88 N. W. Rep., 789, will be found quite an instructive case, well reasoned and rich in citations of the authorities. See especially pages 474 and 475. As was forcibly said by Mr. Justice COOLEY, in Holt v. The People, 13 Mich., 224, text 227, "And we also think that, in criminal cases, whenever, after a full examination, the evidence given upon a challenge leaves a reasonable doubt of the impartiality of the juror, the defendant should be given the benefit of the doubt." Also see O'Connor v. State, 9 Fla., 215, text 222; People v. Helm, 152 Cal., 532, 93 Pac. Rep., 99, and People v. Schmitz, 7 Cal., App. 330, 94 Pac. Rep., 407. After carefully weighing the evidence brought out upon the examination of this juror upon his voir dire and considering it in connection with the cited authorities, as well as others which we have examined, we are impelled to the conclusion that the court erred in forcing this juror upon the defendant, his peremptory challenges having been exhausted.   For this error, the judgment must be reversed.

WHITFIELD, C. J., and COCKRELL. J.. concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.