V. Tine Lockhart and Bertha Rodgers, Alias Berta Rodgers, *Plaintiffs in Error*, v. The State of Florida, *Defendant in Error*.

## Opinion Filed May 13, 1920.

1. An indictment that charges defendants with having lived and cohabited together in an open state of adultery on July 4, 1919, and on divers and many other days within two years next preceding the date of the finding and presenting of the indictment, and that Berta Rodgers and Tine Lockhart did then and there live and cohabit together in an open state of adultery when Berta Rodgers then and there had a lawful husband living, Berta Rodgers then being married to Jim Rodgers, and that Berta Rodgers had a husband living on the date named in the indictment, July 4, 1919, and between that date and that of filing the indictment on the 15th day of October, 1919, is not fatally defective, as vague, indefinite, uncertain and insufficient.

2. Where there is substantial competent evidence of all the facts legally essential to support the verdict, and there is nothing in the record to indicate that the jury were influenced by considerations outside the evidence, this court will not disturb the verdict.

3. A single act of adultery unsupported by other circumstances is insufficient to support a charge of living in an open state of adultery, but where it is shown that the parties were living in the same house, that the woman cooked, washed and kept house for the man; that he introduced her to others as his wife, and that they were seen constantly together and acting generally as husband and wife, testimony of the single act was competent to establish the immorality that was necessary in connection with the other circumstances to constitute the offense.

4. When the court in its general charge covers clearly and fully all the legal questions affecting the cause, it is not error for the court to refuse to give special instructions couched in different language embodying the principle covered by the general charge.

A Writ of Error to the Circuit Court for Jackson County; C. L. Wilson, Judge.

Judgment affirmed.

*Jefferson D. Stephens,* for Plaintiffs in Error;

*Van C. Swearingen,* Attorney General, and *D. Stuart Gillis,* Assistant, for the State.

BROWNE, C. J.—V. Tine Lockhart and Berta Rodgers were indicted and convicted in Jackson County. Omitting the formal portion, the indictment alleges that "on the 4th day of July, A. D. 1919, and on divers and many other days within two years next preceding the date of the finding and presenting of this bill of indictment, did then and there in said county live and cohabit together in an open state of adultery when she the said Bertha Rodgers alias Berta Rodgers then and there had a lawful husband living, and the said Bertha Rodgers, alias Berta Rodgers, then being married to one Jim Rodgers."

A motion to quash on the grounds that the indictment is vague, indefinite, uncertain and insufficient; that it alleges no facts or acts of defendants constituting the offense of adulery; that it fails to state facts sufficient to constitute that offense; that it fails to allege that the defendants held themselves out as husband and wife, or that they lived together openly as husband and wife, was denied.

We do not think that the indictment was fatally defective on any of these grounds. It charges that they lived and cohabited together in an open state of adultery on July 4, 1919, and on divers and many other days within

two years next preceding the date of the finding and presenting of the indictment, and that Berta Rodgers and Tine Lockhart did then and there live and cohabit together in an open state of adultery when Berta Rodgers then and there had a lawful husband living, Berta Rodgers then being married to Jim Rodgers, and that Berta Rodgers had a husband living on the date named in the indictment, July 4, 1919, and between that date and that of filing the indictment on the 15th day of October, 1919.

The second assignment is based upon the denial of the motion for a new trial, the first and second grounds of which attack the sufficiency of the evidence to support the verdict.

The couple lived together five or six miles from Marianna. Several witnesses testified to seeing them together in Marianna on a number of occasions, when they demeaned themselves towards each other as husband and wife.

Jim Rodgers, the husband of Berta, took his wife and baby to Alabama, and Lockhart followed them there and carried Berta and her child back to his home near Marianna. Lilly Morgan went to live in the house with the defendants on April 28th, 1919, and lived there for three weeks. She testified over objection of the defendant that: "One morning, during the time I lived there, I got up early and went through the room, and saw them in bed together, she was laying flat on her back with her head on his arm, with her face turned toward his." "I saw him go in that room every night, and come out the next morning. Never saw them in bed together but that one time. Yes, I am a married woman. My first husband died. I do not know where my present husband is. I know the

usual conduct of married people. I have been twice married. During the time that my husband and I lived in the house with the defendants, they lived together just like they were married to each other. She run the house and he provided what was needed. They stayed in a room with two beds in it. They slept together in one bed and two of his grandchildren and her child slept in the other bed. That was the way they had it arranged."

A witness testified that Lockhart and Berta Rodgers visited at his house, and introduced Berta to his family as his wife. Two witnesses testified that they met the couple on the road on one occasion, and in the course of a conversation Lockhart pointed out Berta to them as his wife.

The defendant Lockhart testified in substanct that Jim Rodgers and his wife, Berta, were living on his place when Jim was drafted, and when he left he told Lockhart to take care of his wife for him until he came back. He took care of them the best he could. Living in his house with him were three small grandchildren and a grown daughter part of the time, and Berta lived there also. He said he slept in one of the large rooms with his grandchildren and Berta slept in the other room with her child. He denied ever having been in bed with Berta Rodgers. He said that when Rodgers returned from the army he took his wife and child to Alabama, but Berta said she wanted Lockhart to hire her to do his cooking and washing and keep house for him, and he went to Alabama after her and brought her back; he thought she had a right to cook and wash and keep house for him as he had to have somebody; he was to give her $6.00 a month for her work; she had lived in his house with him ever since she came back from Alabama. He denied having

told Dees that she was his wife, but admitted saying in the presence of Floyd and Schutes that she was his wife, but said he was just joking.

Berta Rodgers' testimony was substantially the same as that of Lockhart. She says Jim Rodgers was her husband, and they were living at Lockhart's place when he went to the army, and that she continued to live in the house. She also denied ever having been in bed with Lockhart.

It is not necessary to set out the testimony to any greater extent, for after careful consideration of all of it, we find there was substantial evidence to support the verdict.

The fourth ground in the motion for a new trial is based upon the admission of testimony by the State's witness, Lilly Morgan, about having seen the defendants in bed together.

While a singel act of this character unsupported by other circumstances is insufficient to support a charge of living in an open state of adultery, still where it is shown that the parties were living in the same house, that the woman cooked, washed and kept house for the man; that he introduced her to others as his wife, and that they were seen constantly together and acting generally as husband and wife, testimony of the single act was competent to establish the immorality that was necessary in connection with the other circumstances to constitute the offense.

Special charges number two and four that the trial judge refused to give, attempt to epitomize the defendant's testimony and to instruct the jury that if they believe it they should acquit the defendants.

We think the court fully covered in its general charge all the legal principles embodied in these charges. Having done this clearly and fully it is not error for the court to refuse to give special instructions couched in different language embodying the principles covered by the general charge.

Special charge number three was properly refused.

The judgment is affirmed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.