CARL CROSBY, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

En Banc.

Opinion Filed October 9, 1925.

Petition for Rehearing Denied December 9, 1925.

1. Previous service as a grand juror within one year does not of itself disqualify a prospective juror for service as a trial juror in the same court.

2. If a prospective trial juror was a member of the grand jury which found the indictment upon which the defendant is being tried, such juror may be challenged by the defendant for that cause, and, if so challenged, should be excused.

3. Sec. 2692, Revised General Statutes, 1920, deals exclusively with the disqualifications of trial or petit jurors.

4. In order to disqualify a juror by reason of his relationship by affinity with an interested party, it must affirmatively appear that the connecting relative, on account of the marriage with whom the relationship by affinity arose, is still living and the mariage otherwise undissolved, or that there is living issue of such marriage, the burden being upon the challenging party.

5. Ordinarily, the disqualification of a juror can not be established entirely by a presumption of law.

6. In a criminal trial, if a reasonable doubt exists in the mind of a trial judge as to the qualification of a juror challenged by the defendant for cause, the defendant should be given the benefit of that doubt and the juror excused.

7. Section 2775, Revised General Statutes, 1920, providing that persons more than 65 years of age, and all persons subject to any bodily infirmity amounting to disability, shall be excused from jury duty, creates a personal privilege to the juror him-

self. It does not have the effect of disqualifying such person for that duty.

8. Objections to the qualifications of jurors who might be subject to challenge for cause, not raised in the trial court, will not be considered by an appellate court.

9. An assignment in the following language: "Error apparent on the record," presents nothing for consideration by an appellate court.

10. After verdict, all presumptions of law are in favor of the jurors' competency, and the burden of proof is upon one who attacks it.

11. In a prosecution for embezzlement under Section 5152, Revised General Statutes, 1920, it is not error for the trial court to refuse to charge the jury that before they could find the defendant guilty the evidence must establish some "felonious or faudulent or wrongful or corrupt" intent on the part of the defendant to convert, withhold or secrete the money described in the indictment.

12. Where the subject matter of special instructions requested by the defendant has been substantially and correctly covered by the court in its general charge, it is not reversible error to refuse to give such special instructions.

13. In a criminal trial, where the defendant neither testifies himself nor produces any other witness to testify in his behalf, but during the cross examination of a State's witness the defendant identifies and offers in evidence on his behalf a written document executed by a third party (a receipt for money paid by the defendant) which document was theretofore unmentioned by the State, and formed no part of the State's case, the defendant is not entitled to the closing argument to the jury under either Section 6080 or 6081, Revised General Statutes, 1920.

A Writ of Error to the Circuit Court of Walton County; A. G. Campbell, Judge.

Judgment affirmed.

*D. Stuart Gillis* and *Walter Kehoe,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *Marvin C. Mc-Intosh,* Assistant Attorney General, for the State.

STRUM, J.—Plaintiff in Error, hereinafter referred to as the defendant, was indicted for embezzlement, the indictment being predicated on Section 5152, Revised General Statutes, 1920, relating to embezzlement of money or other property by State, County or Municipal officers. Upon a trial on said charge he was convicted, and to the judgment of conviction takes writ of error.

The indictment charges, in effect, "that the defendant, while Clerk of the Circuit Court of Walton County, Florida, whose duty it was to collect, receive and take into his possession moneys due for the redemption of tax certificates belonging to and held by individual purchasers thereof covering lands sold for delinquent taxes due the State of Florida and County of Walton, did collect, receive and take into his possession, as such Clerk, certain moneys due to and the property of McLean Realty Company, a corporation, for the redemption of certain tax certificates * * * and said moneys so as aforesaid coming into his possession by virtue of his said office as Clerk of the Circuit Court for the said County of Walton, he, the said Carl Crosby, then and there, to-wit: on the 18th day of October, A. D. 1923, in the County of Walton, State of Florida, did feloniously embezzle and fraudulently and feloniously withhold and convert to his own use * * *.'' The sufficiency of the indictment is not before us for review.

During the voir dire examination by the defendant of the prospective jurors called to try the case, one of them,

Mr. Douglas, was challenged by the defendant for cause, upon the grounds: (1) that the juror challenged had served as a member of the grand jury in the Circuit Court of Walton County, Florida, the same Court in which the defendant was being tried, within one year; (2) because the juror challenged "is related to Mr. McLean;" and (3) because the juror was 76 years of age and entitled to exemption from jury duty. The challenge for cause was overruled by the Court, whereupon the defendant excepted to such ruling and challenged the juror peremptorily. This exhausted the last peremptory challenge available to the defendant. The record indicates that the defendant desired to exercise another peremptory challenge. It therefore becomes material to determine whether the trial court was correct in overruling the challenge for cause. Young v. State, 85 Fla. 348, text 352; 96 South. Rep. 381, text 382; Settles v. State, 75 Fla. 296; 78 South. Rep. 287; Mathis v. State, 45 Fla. 46; 34 South. Rep. 287; Green v. State, 40 Fla. 191, 23 South. Rep. 851.

Previous service as a grand juror within one year does not of itself disqualify a prospective juror for service as a trial juror in the same court. Section 6005, Revised General Statutes, 1920, prescribes the circumstances under which a former member of a grand jury is disqualified, by reason of said service, as a trial juror. That section provides:

"No member of a grand jury which finds a bill of indictment shall be put upon a jury for the trial of that indictment, if challenged for that cause by the defendant."

The effect of the Section just quoted is not to absolutely disqualify a grand juror for service on a trial jury to try an indictment found by the grand jury upon which he served, but makes such service a challenge for cause which may be waived by the defendant, or not, as he elects. Long v. State, 78 Fla. 464, 83 South. Rep. 293, and cases cited.

If so challenged, however, the grand juror would be incompetent as a trial juror to try the defendant on such indictment, regardless of whether his service on the grand jury which found the indictment was within one year or not.

Section 2692, Revised General Statutes, 1920, deals exclusively with the disqualifications of trial or petit jurors. That portion of the latter Section upon which the challenge was based is as follows:

"It shall be grounds of challenge for cause if any person called as a juror in any justice of the peace court, county judge's court, county court, criminal court, court of record, circuit court, or any other court whatsoever wherein trial by jury is had, has served as a juror in the court in which he is called at any other time within one year where no regular terms of court are held, or at any other term within one year where regular terms of court are held."

Since this statute does not in specific terms define the previous disqualifying service to be that of a "trial" juror, the expression "has served as a juror," detached from the remainder of the section and taken alone, might be susceptible of a construction which would embrace a grand juror. The term "juror" is sometimes held to include both grand and petit jurors. Clawson v. U. S., 114 U. S. 477; 5 Sup. Ct. Rep. 949; 29 Law. Ed. 179; Spencer v. U. S., 169 Fed. 562, 566; 95 C. C. A. 60. In the instances cited, however, the legislative intent and the purpose to be accomplished by the statute plainly indicates the inclusion of grand jurors. But whether or not the term "juror" embraces both grand and petit jurors depends altogether upon the intent, purpose or will of the Legislature in using it. The legislative intent is the essence and vital force of a statutory enactment. State v. Patterson, 67 Fla. 497; 66 South. Rep. 659. In appropriate cases, the legislative intent may prevail even over the literal import

13—Vol. 90.

of the specific language employed in the statute.   Curry v. Leaman, 55 Fla. 47, 47 South. Rep. 18.   Where the intent is not clearly apparent from the specific language of the statute, it must be deduced from a consideration of the language used, the full context in which it appears, the obvious meaning of the ambiguous expression where employed elsewhere in the same statute, the subject matter of the statute, the purpose designed to be accomplished, and all other relevant and proper matters, including other statutes in *pari materia*.   Sparkman v. State, 71 Fla. 210, 71 South. Rep. 34; Curry v. Leaman, 55 Fla. 847; 47 South. Rep. 18; People v. New York and Manhattan Beach Railway Company, 84 N. Y. 565.

Sections 6005 and 2692 were simultaneously re-enacted into law as a part of the Revised General Statutes, 1920. The former relates exclusively to the disqualification of trial jurors by reason of certain designated previous service as grand jurors.   Section 2692 is found in a sub-division of the Revised General Statutes, 1920, relating to "proceedings at the trial" of cause.   When the expression "as a juror" is used in a statute pertaining to "proceedings at the trial," it obviously refers to a trial juror.   The section is captioned: "Challenge of Jurors."   The section is divided into subdivisions 1 and 2, the former relating to peremptory challenges, the latter to challenges for cause. These references clearly relate to trial jurors.   The term "jury" is ordinarily applied to a petit or trial jury distinctly.   Bouvier's Law Dict., Vol. 2, page 63.   The entire context of the section plainly indicates that where the word "juror," or the expression "as a juror," are used elsewhere therein a trial juror is meant.   Only trial jurors were under consideration.   Where a grand juror is meant an express designation is usually employed.   Our statutes repeatedly observe this distinction in designation.   See Sections 2771, 2777, 2779, 2780, 2781, 2788, Revised Gen-

eral Statutes, 1920. Having dealt with and referred exclusively to trial jurors by the use of the expression "as a juror" in all other parts of Section 2692, if the Legislature in again employing the same expression in the phrase under consideration had intended to enlarge its meaning so as to then include grand jurors as well as trial jurors, doubtless such intent would have been indicated by the use of a plainer and more specific designation. The purpose of Section 2692 is to secure to the defendant full opportunity to be tried by a competent jury, and to prevent the repeated appearance of so-called "professional trial jurors." Considering Sections 6005 and 2692 together, and considering also the subject matter and context of the latter, the manner in which the questioned expression is therein used, and the purpose to be accomplished by the Section it is plain to us that it was not the intention of the Legislature to provide that service upon a grand jury would of itself disqualify such juror as a trial juryman in the same Court for one year thereafter, unless, of course, in a criminal trial, the grand jury of which the challenged juror was a member found the indictment upon which the defendant is being tried, in which event such juror would be subject to challenge by the defendant for that cause. Although statutes relating to disqualification of jurors are usually liberally construed, this rule of construction will not serve to impose such a statute a construction plainly contrary to its purpose and intent.

The voir dire examination of the juror, Mr. Douglas, discloses that although the grand jury of which he was a member investigated certain charges against the defendant, the charges upon which the defendant was then on trial were not before that grand jury, nor was the indictment upon which the defendant was being tried found by that grand jury. Since the service of the juror upon the grand jury does not of itself disqualify him as a trial juror,

it follows that this ground of the challenge was properly overruled.

Subsequent to the effective date of Chapter 7851, Acts of 1919, now Section 2692, Revised General Statutes, 1920, if it shall appear that any person called 'as a juror "is related to any person alleged to have been wronged or injured by the commission of the crime for the trial of which the juror is called," the juror is incompetent to serve, if challenged. It was brought out on voir dire examination that the prospective juror, Mr. Douglas, was a brother-in-law of Mr. Jim McLean. It appears from the testimony subsequently adduced at the trial that Mr. Mc-Lean was president of McLean Realty Company, a corporation. But the record is entirely silent as to whether the relationship of brothers-in-law continued to exist in contemplation of law between Messrs. Douglas and McLean at the time of the voir dire examination of the former. Relationship by affinity arises through marriage. If the marriage, on acount of which such relationship exists, be dissolved by death or otherwise, the relationship, in contemplation of law, ceases to exist, unless issue of such marriage survives. The rule is well settled in this and other States that in order to disqualify a juror by reason of his relationship by affinity with an interested party, it must *affirmatively* appear that the connecting relative, on account of the marriage with whom the relationship by affinity arose, is still living, and the marriage otherwise undissolved, or that there is living issue of such marriage, the burden being upon the party challenging the juror to make such disqualification affirmatively appear. Morirson v. McKinnon, 12 Fla. 552; Walsingham v. State, 61 Fla. 67, 56 South. Rep. 195, and cases therein cited. Shiver v. State, 41 Fla. 630, 27 South. Rep. 36; Miller v. State, 97 Ga. 653, 25 S. E. Rep. 366; State v. Shaw, 25 N. C. 532. Ordinarily the disqualification of a juror cannot be established entirely by

a presumption of law. It is the duty of the challenging party to make the grounds of present disqualification of the juror clearly appear. See Ammons v. State, 65 Fla. 166, 61 South. Rep. 496; Settles v. State, 75 Fla. 296, 78 South Rep. 287; Washington v. State, 86 Fla. 533, 98 South. Rep. 605. The principle that a status once shown to exist is presumed to continue until the contrary is shown will not ordinarily prevail over such duty. Of course, if the showing as to the continued existence of the relationship is such as to leave in the mind of the Court a reasonable doubt of its termination, the defendant should be given the benefit of that doubt, and his challenge of such juror for cause sustained. In this instance, the defendant having made no showing whatever either that the connecting relative between the juror and Mr. McLean was still alive and the marriage otherwise undissolved, or that if such relative be dead, there were surviving issue of the marriage, the challenge on the ground of relationship was properly overruled.

Section 2775, Revised General Statutes, 1920, providing that all persons more than 65 years of age, and all persons subject to any bodily infirmity amounting to disability shall be excused from jury duty, does not have the effect of disqualifying such persons for such service, but is a personal privilege to the juror himself, of which he can avail himself or not at his discretion, and if he sees proper to waive the privilege, his age of itself furnishes no sufficient ground of challenge for cause. Brown v. State, 40 Fla. 459, 25 South. Rep. 63.

There was therefore no error in overruling the challenge for cause of the juror, Mr. Douglas, upon the grounds urged against his qualifications. This being true, the fact that the defendant was required to use his last remaining peremptory challenge to displace this juror affords no ground for reversal.

When the State tendered the jury, the defendant with his two attorneys, by permission of the Court, temporarily retired from the court room to confer as to whether the defendant would accept the jury as tendered.  During their absence another juror, Mr. Theo. Garrett, voluntarily remarked: "I believe I would have an interest in the outcome of this case." To this remark the State's Attorney replied: "All right." In their brief, counsel for the defendant state that "said remark not having been called to their attention by the State's Attorney, neither the defendant's attorney nor the defendant knew of the remark of the juror Garrett until after the jury had been sworn and the trial entered into." We infer from this language that the defendant or his counsel learned of the remark during the course of the trial.  The question of the competence of this juror, however, was at no time presented to the trial court for consideration and determination.  Depending upon when the defendant learned of the remark above quoted, the question of the juror's qualification might have been raised by a motion to quash the panel and declare a mistrial, or in the motion for new trial.  The question is presented for the first time in the Appellate Court.  There are two reasons why the supposed error can not be considered here as a ground for reversal: First, objections to the qualification of jurors who might be subject to challenge for cause, not raised in the trial court, will not be considered by an Appellate Court.  McNish v. State, 47 Fla. 69, 36 South. Rep. 176.  Second, there is no sufficient assignment of error presenting the question.  The matter is argued in defendant's brief under the assignment "Error apparent on the record."  Such an assignment presents nothing for consideration by an Appellate Court. Williams v. State, 58 Fla. 138, 50 South. Rep. 749.  Besides, the matter complained of is not "on the record."  It is a matter *in pais* evidenced only by the bill of exceptions.  In order

to obtain a review in an Appellate Court of a supposed error resting upon matters occurring *in pais,* the supposed error must have been brought to the attention of the trial court, a ruling obtained thereon and an exception thereto duly noted by the complaining party, after which the matter should be the subject of a definite assignment of error.

Furthermore, it does not clearly appear that the defendant was in any wise harmed by the retention of this juror upon the panel. The remark by the juror was that "he thought" he would have "an interest" in the outcome of this case. Assuming that the "interest" was sufficient to legally disqualify the juror, was it hostile to the defendant or friendly to him? For aught shown by the record, the interest expressed by the juror may have consisted of a desire to see the defendant acquitted, in which event the retention of this juror would certainly not be harmful to the defendant. If the juror's interest was such as to influence his mind toward a conviction, there is no indication thereof in any part of the record. After verdict, all presumptions of law are in favor of the juror's competency, and the burden of proof is upon one who attacks it. McGowan v. State, — Fla. —, 102 South. Rep. 890.

Several assignments question the correctness of the ruling of the trial court refusing to give certain charges requested by the defendant, as well as the accuracy of other charges given by the court of its own motion, upon the question of intent. The only open question presented by these assignments is whether or not the trial court should have charged the jury that before they could find the defendant guilty "the evidence must establish on the part of the defendant some 'felonious or fraudulent or wrongful or corrupt' intent to convert, withhold or secrete" the money described in the indictment.

Section 5152, Revised General Statutes, 1920, upon which the indictment is based, provides:

"Any State, County or Municipal officer who shall:

1. Convert to his own use, or who shall:

2. Secrete with intent to convert to his own use, or who shall

3. Withhold with the intent to convert to his own use * * * any money, property or effects of another, the duty of which officer requires him to receive said money, property or other effects, shall in every such act be deemed guilty of an embezzlement * * *."

The Legislature has the undoubted right, within constitutional limits, to declare an act criminal, irrespective of the motive with which the act was done. In such instances the function of the court is to ascertain the intention of the Legislature, and to enforce the law in absolute conformity with such intention. Halsted v. State, 41 N. J. Law 592, 1 Bishop's Criminal Law, Section 345; State v. Manley, 17 S. W. Rep. 803; State v. Pratt, 11 S. W. Rep. 977; Hill v. State, 62 Ala. 169; State v. Hollyway, 41 Ia. 203. The statute creating the offense upon which the indictment is based nowhere requires that the withholding or conversion shall be either with "fraudulent," "felonious," "wrongful" or "corrupt" intent as stated in the requested charge. The gist of the offense, as defined by the statute, is the receipt by the officer, in his official capacity, of money or other property belonging to another, and the withholding or conversion thereof, to his own use, or the secreting thereof with intent to so convert the same. The refusal of the trial court to charge the jury that before they could find the defendant guilty, the evidence must establish on the part of the defendant some "felonious, fraudulent, wrongful or corrupt" intent to convert, was therefore not error. State v. Adams, 18 S. W. Rep. 1000.

The charge given by the court that the withholding or conversion must have been "knowingly and unlawfully"

done, when taken in connection with the further charges as to what would constitute a knowing or unlawful withholding or conversion, was sufficient under the charge of the indictment and the evidence. The words "felonious" and "fraudulent" as employed in the indictment in connection with the charge of withholding and converting the money are harmless surplusage. Black v. State, 77 Fla. 289, 81 South. Rep. 411.

The defendant requested other special charges upon the subjects of reasonable doubt, the presumption of innocence, and the purpose for which evidence of other and similar defalcations by the defendant were admitted at the trial. These questions were substantially and correctly covered by the court in its general charge. There was therefore no error in refusing to give the special charges requested. Lockhart v. State, 79 Fla. 824, 85 South. Rep. 153.

The ruling of the trial court denying to the defendant the closing argument in submitting the case to the jury is also assigned as error. At the conclusion of the State's case, the bill of exceptions discloses the following: "Thereafter the State announced that it rested its case, whereupon the defendant announced that he closed."

The bill of exceptions further discloses that during the cross examination of James A. McLean, a witness for the State, the following occurred:

"Q. Now on the 11th day of November, 1924, you gave Carl Crosby your receipt, did you not?"

A. Yes, sir.

Mr. Kehoe (attorney for defendant): We offer this receipt in evidence. I want to read it to the jury.

Mr. Thompson (the State's Attorney): Let me see it first.

Mr. Kehoe: All right. (Handing paper to counsel.)

Mr. Kehoe: We offer it in evidence.

The receipt in question was thereupon admitted in evidence, read to the jury and marked Exhibit 5 for the defendant, and is in the words and figures following: 'Received of Carl Crosby, $204.19, in full for tax sale certificates held by the McLean Realty Company, and shown to have been redeemed through him as Clerk of Circuit Court Walton County. This February 11, 1924.

The McLean Realty Company, by James A. McLean, Sec.-Treas.' ''

Section 6080, Revised General Statutes, 1920, providing, amongst other things, that ''a defendant offering no testimony shall be entitled to the concluding argument before the jury,'' is a modified consolidation of Chapter 539, Acts of 1853; Chapter 1816, Acts of 1870; and Chapter 4400, Acts of 1895.

Section 6081, Revised General Statutes, 1920, is as follows:

''That in all criminal cases where the defendant offers no testimony in his own behalf, except his own, the attorney or attorneys for the defendant shall have the closing argument.'' This Section was enacted as Section 1 of Chapter 6228, Acts of 1911.

Both Sections 6080 and 6081 were simultaneously re-enacted as a part of the Revised General Statutes, 1920. Each, perhaps, has a distinct sphere of operation.

The ruling of the trial court denying the defendant the closing argument in this case presents two questions, viz:

(1)   Has the defendant ''offered no testimony'' so as to be entitled to the closing argument under Section 6080, Revised General Statutes, 1920? and

(2)   Has the defendant ''offered no testimony in his own behalf, except his own,'' so as to entitle him to the closing argument under Section 6081, Revised General Statutes, 1920?''

The written receipt of the McLean Realty Company, upon which the point turns, was admitted in evidence during the presentation of the State's case in chief and during or at the conclusion of the cross examination of a State's witness. It would have been more in keeping with the usual practice to have identified the receipt at that time and then, if the defendant desired to introduce it in evidence, to offer it after the State had closed. The trial court might have properly sustained an objection by the State to the introduction of the receipt in *evidence* by the defendant at that time. However, the trial court is clothed with broad discretion in regulating the order of introduction of evidence, so the admission of the receipt at that time, in this instance, was not important, no objection being made by the State.

The receipt was *never* offered in evidence by the State. It was offered in evidence *by the defendant,* as is plainly shown by. the foregoing excerpts from the bill of exceptions. The written receipt itself was no part of the State's evidence adduced upon cross examination of its own witness. Because the defendant desired to put the receipt itself in evidence, and chose that particular time to do so does not constitute the receipt a part of the State's evidence. To so regard it would utterly deprive the State of control of its own case and throw the whole trial into confusion. Cross examination by the defendant of a State's witness, when confined to its legitimate scope, would not deprive the defendant of the closing argument under either statute, but when the defendant on cross examination of a State's witness, identifies a document theretofore unmentioned in the State's case, and of his own motion, then places the document itself in evidence, such procedure passes entirely beyond the realm of cross-examination. The undubitable effect, then of such procedure is to offer testimony for the defendant. Consequently he is deprived of the closing

argument under Section 6080.   Hargrove v. State, 117 Ga. 206, 45 S. E. Rep. 58.

It can not be said that this receipt was "his own" (defendant's) testimony, as the expression is used in the statute, because it is the receipt of McLean Realty Company.   It was identified and offered in evidence by the *defendant* during the testimony of a witness *other* than the defendant.   It is therefore evidence on behalf of the defendant, but not "his own testimony."   The defendant did not take the stand at all, but through the identification of a State's witness he himself placed in evidence the written statement of another party—the receipt.   The defendant has therefore offered testimony in his own behalf, other than his own, and is therefore not entitled to the closing argument under Section 6081.

Though the testimony was offered at an unusual time, the effect of the procedure was to temporarily suspend the State's case while the defendant offered this testimony, after which the State's case was resumed.   It was none the less testimony on behalf of the defendant because of that circumstance.

We note that both statutes employ the term "testimony" instead of the broader and more comprehensive term "evidence."   Technically speaking, the written receipt might be more accurately denominated "evidence" than "testimony."   We recognize the fact that the two words are by no means technical synonyms, and when employed in the technical sense the plainly existing distinction should be observed.   It is not difficult to conceive many situations in which it would be highly improper to confuse the two terms, and we therefore by no means commit ourselves to the doctrine that the two terms may always be used as synonyms or even interchangeably.   Central Union Tel. Co. v. State, 110 Ind. 203; 12 N. E. Rep. 136; Sanford Tool & Fork Co. v. Mullen, 27 N. E. Rep. 448; Craggs v. Bohart,

69 S. W. Rep. 931, 934; Columbia National Bank v. German National Bank, 56 Neb. 803, 77 N. W. Rep. 346; Gazette Printing Co. v. Morse, 60 Ind. 153, 157..

In a practical sense, however, as distinguished from forms of technical certificates, pleadings or the like, the two words are frequently, perhaps generally, used interchangeably. This was directly held by the Supreme Court of Georgia in the construction of a statute identical in effect with Section 6081. That Court held that while, strictly speaking, "testimony" and "evidence" are not synonymous terms, the word "testimony" as used in the Georgia Statute means either oral or documentary evidence. Hargrove v. State, 117 Ga. 706, 45 S. E. Rep. 58. See also to like effect in reference to these words used as synonyms in other respects: U. S. v. Clark, 5 Utah 226; 14 Pac. Rep. 288; in re: Brown's Estate, 92 Ia. 379, 60 N. W. Rep. 659; Mann v. Higgins, 83 Calif. 66, 23 Pac. Rep. 206; Noyes v. Pugin, 2 Wash. State 653, 27 Pac. Rep. 548; Little v. Russell & Co., 44 Pac. 212; Harris v. Tomlinson, 130 Ind. 426, 30 N. E. Rep 214; U. S. v. Luce, 141 Fed. Rep. 385, 395; State v. Winney, 128 N. W. Rep. 680, 681; Jones v. City of Seattle, 98 Pac. Rep. 743, 745; Fitzgerald v. Banner, 219 Ill. 485, 76 N. E. Rep. 709, 716. Many other cases to like effect are also available.

We are of the opinion that the Legislature, in enacting the two statutes now under consideration, did not use the term "testimony" with the technical distinction in view. Nor were the statutes intended to accord the defendant the opportunity of introducing unlimited documentary or other "evidence," entirely independent of his own personal testimony, and still permit him to claim the privilege of the closing argument. The trial court was therefore correct in this instance in denying the defendant the closing argument.

Finding no error, the judgment of the lower court is affirmed.

WEST, C. J., AND WHITFIELD, ELLIS, TERRELL AND BROWN, J. J., concur.