State, Jackson Co. v. South. Land & Timber Co.—Syllabus.

THE STATE OF FLORIDA AND THE COUNTY OF JACKSON, PLAINTIFFS IN ERROR, VS. SOUTHERN LAND AND TIMBER COMPANY, A CORPORATION, DEFENDANT IN ERROR.

TAXATION—ILLEGALITY OF ASSESSMENTS—REMEDIES OF TAXPAYERS—CONSTRUCTION OF STATUTES, GENERAL AND SPECIAL.

1. The principles of law announced in the case of Jackson County v. Thornton, decided at the June Term, 1902, of this court (33 South. Rep. 291) are approved and applied to this case.

2. Section one (1), Chapter 4516 of the laws of 1897, providing for the levy upon the real and personal property in the counties of the State of three and one-half mills upon the dollar, for the current expenses of the State for each of the years 1897 and 1898, being a part of a general law providing for levying taxes in those years, does not take away the power conferred by section 784 Revised Statutes of levying a special tax of not more than one-half mill for public health purposes in addition to the three and one-half mills provided for in section 1, Chap. 4516; section 784 being a special law. Nor is it necessary to make a levy legal under the latter section that there should be a further act of appropriation of the money raised thereunder. The language of the section not only authorizes the levy of the tax, but ex proprio vigore is an appropriation of the funds to be raised therefrom to public health purposes.

3. Chapter 4520, laws of 1897, providing for the levy of a tax of half a mill, the proceeds to be devoted to the payment of pensions, is a special act, and the rate of three and one-half mills for the current expenses of the State provided for by section 1, Chapter 4516, laws of 1897, is a general law and does not embrace the half mill pension tax above mentioned, nor is there any conflict between the two acts.

4. Chapter 4526, laws of 1897, is a special act authorizing the county commissioners of every county to levy a special

tax not to exceed two mills upon the real and personal property of their respective counties for the expenses of criminal prosecutions, and this rate is not embraced in the five mill rate permitted by section 2, Chapter 4516, laws of 1897, for county purposes, the latter being a general law.

5. In the construction of general and special acts the maxim "generalia specialibus non derogant" applies, and a general act will not be held to repeal or modify a special one embraced within the general terms of the general act, unless the general act is a general revision of the whole subject, or unless the two acts are so repugnant and irreconcilable as to indicate a legislative intent that the one should repeal or modify the other.

3. Where the board of county commissioners at the October meeting, 1897, after correcting and reviewing the county assessment, did ascertain and determine the rate of taxation for each purpose for which taxes were to be levied, and the aggregate amount to be collected for each purpose, and ordered the tax collector to be debited with these several amounts, all of which appears from minutes of said meeting, the requirements of section 2, Chapter 4516, laws of 1897 are substantially complied with.

This case was decided by Division A.

Writ of error to the Circuit Court for Jackson County.

*Wm. B. Farley,* for Plaintiffs in Error.

*Carter, Wilson & Boone,* for Defendant in Error.

## STATEMENT.

On March 18th, A. D. 1898, the defendant in error filed in the office of the Clerk of the Circuit Court of Jackson county, Florida, its petition alleging that the Southern

Land and Timber Company, a corporation, having its
general office in the State of Wisconsin, is, and was dur-
ing the entire year A. D. 1897, a taxpayer of said county
of Jackson, in the State of Florida, and is the owner of
certain real estate, to-wit: about 12,840 acres of land ly-
ing therein, and describing the land; that at a regular
meeting of the board of county commissioners of said
county on the first Monday in July, 1897, the said board
did proceed to levy for said year 1897, upon all the real
and personal property within said county, a tax for
county purposes at the rate of five mills on the dollar
valuation for county schools, three and one-half mills on
the dollar for a (so-called) "county proper" tax, and two
mills upon the dollar for the fine and forfeiture fund for
payment of costs of criminal prosecutions, making a total
rate of taxation for county purposes, including county
schools, of ten and one-half mills upon the dollar, which
levies so made were recorded upon the minutes of the
board. But petitioner alleges that said board did not,
at said meeting or at any other meeting, ascertain and
determine the amount of money to be raised by tax for
county purposes for said year 1897, and cause such de-
termination to be entered upon their records as the law
required; that in and for said year 1897 the tax assessor
of said county of Jackson assessed against the real and
personal property therein, including said lands of peti-
tioner, a tax of five and one-quarter (5¼) mills upon the
dollar valuation, in addition to the county tax aforesaid,
for the State of Florida, which said tax, to distinguish it
from the aforesaid tax for county purposes, is denomi-
nated the State tax. Neither the records of said county
commissioners, nor the assessment books themselves, dis-

close the special items which make up this five and one
quarter mills, but petitioner is informed and believes that
it is made up as follows:

(So-called)  General Revenue $3\frac{1}{2}$ mills.

State School tax 1 mill.

Tax for Pension appropriation $\frac{1}{2}$ mill.

Tax for State Board of Health $\frac{1}{4}$ mill;

that said lands of petitioner are all unimproved, and
have been assessed for taxation for the year 1897 by the
tax assessor of Jackson county at a valuation of three
dollars per acre; that this valuation is grossly excessive
of the real value of said lands, as well as greatly exces-
sive of the value at which other lands of like character
similarly situated and in the same locality are assessed;
that the said assessment of lands is not a fair assessment
at its true cash value, but is made arbitrarily in pursu-
ance of a prearranged plan of the tax assessor of said
county whereby he assessed all lands, in character similar
to these (unimproved pine lands) which are returned for
assessment by the owner thereof, at one dollar to one dol-
lar and a quarter per acre, and those not so returned to
him for assessment at three dollars per acre to owner un-
known, without regard to the true difference in value of
the lands assessed, but absolutely and exclusively upon
the action of the owner in giving in, or his non-action in
failing to give in his lands for assessment; that the as-
sessment of petitioner's property above described was
made in pursuance of said plan, and the same is unjust
and unequal, without uniformity, fraudulent, illegal and
void; that its lands were given in and assessed for taxa-
tion in Jackson county, Florida, for the year 1896 at the
valuation of one dollar per acre, which it alleges was a
fair valuation for same, and that said lands were of no

greater value in 1897 than they were in the year 1896;
that the action of the tax assessor in assessing said lands
of petitioner for the year 1897 at the valuation of three
dollars per acre was arbitrary, fraudulent and illegal;
that said assessor did (not) make such assessment upon
a personal inspection of the lands assessed, nor upon the
basis of a true cash value of the same, but assessed them
arbitrarily, without regard to their value, under the pre-
arranged plan above set forth.

Petitioner further alleges that the entire tax rate for
county purposes, including schools, is blended in making
up the assessments, and the entire tax, calculated at ten
and one-half mills, is calculated and extended in a sum
total in one column for county purposes, and the entire
tax rate for State purposes, including schools, is blended
in making up the assessment, and the entire tax, calcu-
lated at five and one-quarter mills, is calculated and ex-
tended in a sum total in a separate column for State
purposes, thereby making the assessment of each parcel
of property for county purposes an entire, inseparable as-
sessment, and the assessment on each parcel of property
for State purposes an entire inseparable assessment.

Petitioner is advised and believes that the tax on its
said lands for county purposes is excessive in rate, the
assessment based upon an unequal and arbitrary valua-
tion, and the tax is not levied in pursuance of law; also
that the tax on its said land for State purposes is exces-
sive in rate, the assessment being based upon an unequal
and arbitrary valuation, and the tax is not levied in pur-
suance of law; but, nevertheless, the said assessor has
issued his warrant to the collector of revenue in and for
said Jackson county, commanding him to collect the taxes
so assessed against each and every of the parcels of land

aforesaid, and the said collector demands the payment of the full amount of the taxes levied, and proposes, if same is not paid by the first day of April, 1898, to advertise and sell said lands at public sale to the highest bidder to satisfy his demand for said taxes. In view of the premises the petitioner prays the judge of the court to consider the same, together with the evidence which is herewith presented to sustain the allegations of this petition, and order and adjudge said assessment to be not lawfully made. The petition was sworn to. Notice of a hearing of this petition was served on W. B. Wynn, tax collector of Jackson county, Florida, to be had on March 25th, 1898.

On March 25th, 1898, W. B. Wynn, tax collector, appeared and filed a demurrer to the petition, containing several grounds, which demurrer was overruled and the ruling of the court was excepted to. An answer was then filed by the tax collector alleging, in substance, that the assessments complained of were in all respects legal and proper.

Testimony, consisting of the entire assessment rolls of Jackson county for the year 1897, minutes of the board of county commissioners of the July, August and October meetings for that year, affidavits on the question of over valuation and a letter of the Comptroller to the assessor directing him to assess five and one-quarter mills upon taxable property for all State purposes for 1897, was presented to the judge on the sixth of June, A. D. 1898, and on that date he made an order adjudging that the assessment of petitioner's property was not and is not lawfully made.

From this order a writ of error was sued out from this court.

HOCKER, J. (*after stating the facts.*)

As to that portion of the petition which attacks the assessment of petitioner's property on the ground of excessive valuation thereof by the assessor, it is only necessary to say that in the case of The County of Jackson v. Thornton, decided at the June Term, 1902, of this court, it was held that "the assessments for which a party has a remedy by petition under the provisions of section 1542 Revised Statutes are assessments wherein, independently of the exercise of a discretion as to value, there appears error *in matter of law*. The remedy given by this statute does not extend to individual assessments made by a tax assessor where the alleged illegality is confined entirely to or results solely in an excessive valuation of the property, whether such excessive valuation resulted from an erroneous exercise of judgment as to value or from the adption of an erroneous principle in placing values. The statutes providing for a review and equalization of values by equalizing boards, before which tax payers can be heard as to the reduction of values made by assessing officers, furnish the proper remedy where over-valuation is the sole complaint. If the tax payer can obtain from such equalizing board all the relief to which he is entitled—that is, the reduction of the values assessed on his property to the standard provided by the statutes—he must go there for relief, and not by petition to the Circuit Judge." And further, "the remedy provided by section 1542 Revised Statutes is not coextensive with that afforded by a court of equity to prevent the collection of taxes. It is confined entirely to illegality of assessments, and where this is found to exist in the statutory proceeding, the judge cannot adjust values; he can only adjudge

the assessment to be not lawfully made. The remedy afforded by statute reaches only *irregularities in matters of law* connected with the assessment." The proceeding in this case is based on section 1542 Revised Statutes, and under the authority of the above quoted decision the facts set forth in the petition as to over valuation of petitioner's property would not warrant the order made by the Circuit Judge.

We next inquire whether the county commissioners were authorized by law to levy a total assessment for all county purposes of ten and a half (10½) mills upon the dollar, and whether the assessor was authorized to levy a total assessment for State purposes of five and a quarter (5¼) mills upon the dollar of the assessed valuation of the property in the county of Jackson. The following is from the minutes of the meeting of the board of county commissioners of July, 1897: "It is hereby ordered that the tax assessor do assess, and the tax collector do collect, the following rate of taxes on all real and personal property, of all persons and corporations within the county of Jackson for the year 1897, to-wit: county fund proper 3½ mills; county school fund 5 mills, of which 4 mills are to be applied to the current expenses of the ensuing fiscal year, and one (1) mill for outstanding indebtedness for school purposes; and county fine and forfeiture 2 mills, and that collections be made for all license required by the statute at the rate of 50 per cent. of the State license." It appears from the minutes that at the October meeting, 1897, of the board of county commissioners the tax assessor was present with the tax books of 1897, and that the board proceeded to the examination and comparison of said books; that the same were found correct and so certified; and that the following amounts

were ordered debited to the tax collector, W. B. Wynn, *viz*:

County tax at 3½ mills.......................$6,511.62
County Schools at 5 mills........................ 9,302.30
County School polls.............................. 2,778.00
Fine and forfeiture at 2 mills................... 3,720.95

A letter of the Comptroller of the State, addressed to the tax assessor, dated June 11, 1897, was filed in evidence and is as follows:

"Dear Sir:—The rate of taxation for all State purposes for the year 1897 is five and one-quarter (5¼) mills which includes all taxes levied as follows:

General revenue 3½ mills.

Pensions ½ mill.

General School tax 1 mill.

State Board of Health Tax fixed by the Governor ¼ mill.

Total 5 ¼ mills.

You will assess the taxes for all State purposes at the total rate of five and one-quarter mills (5¼) upon all taxable property, and place the total amount of State taxes, in each case, in the column provided in the assessment roll for that purpose.

Yours very truly,

W. H. REYNOLDS,

Comptroller.."

It further appears from an affidavit of the chairman of the board of county commissioners that at the July meeting, 1897, said board made a thorough investigation of the financial condition of the county, and determined hwo much money it was necessary to raise by taxation for the ensuing year, and fixed the rates after the most careful consideration of the needs and resources of the county

State, Jackson Co. v. South. Land & Timber Co.—Opinion.

It is contended by defendant in error that the assess-ment for the State tax is void because in excess of the rate permitted by section 1, Chap. 4516, laws of 1897, and that the assessment for county purposes is void because in excess of the rate permitted by section 2 of the same Chapter. We quote as much of said sections as explain the contention of defendant in error: "Section 1. That for the purpose of securing an equal and uniform rate of taxation and to pay the appropriations for the current expenses of the State for the years 1897 and 1898, and for interest on the bonded debt for said years, there shall be levied upon the real and personal property of the dif-ferent counties for the year 1897 a tax of three and one-half mills upon the dollar, and for the year 1898 a tax of three and one-half mills upon the dollar, and there shall also be levied for each of the years 1897 and 1898 a constitutional school tax of one mill upon the dollar," &c.

"Sec. 2. The board of county commissioners of every county, at a meeting for correcting and reviewing the county assessment, shall immediately thereafter ascertain and determine the amount of money to be raised by the tax for county purposes, including the current expenses, interest on bonded debt, bridges and county buildings, and to meet the expenses, they are hereby authorized to levy a tax of not more than five mills upon the dollar on the real and personal property of the county, and every such determination and levy so made shall be entered at large upon the records of the board of county commission-ers, and no county shall levy a greater amount for any purpose than five mills for county purposes, and any in-debtedness contracted by the county commissioners of any county in excess of the said amount shall be null and

void, and no suits shall be prosecuted in this State for the collection of the same; provided, that the county commissioners of each county shall levy a tax not to exceed five mills, nor less than three and one-quarter mills, on the dollar on the real and personal property of the county for county school purposes; provided further, that the county commissioners of any county may levy an additional tax not to exceed four mills on the dollar each year to pay all outstanding indebtedness and interest thereon; provided, that nothing in this act shall be so construed as to prohibit any county wishing to erect a court house or jail from levying the amount of special taxes now allowed by law for that purpose; provided further, this act shall not apply to counties working roads under special laws."

"Sec. 4. All laws and parts of laws in conflict with this act are hereby repealed."

In regard to the State levy of five and one-quarter mills it is contended that under the first section of the act above quoted the rate limit for State taxes to pay the appropriations for the current expenses of the State for 1897 is fixed at three and one-half mills, which, with the constitutional school tax of one mill, makes a total rate of four and one-half mills, and that the board of health rate of one-quarter mill and the pension rate of half mill should have been included in the three and one-half mill rate for general revenue. For the State it is contended that the board of health rate is authorized by a *special* law (section 784 Rev. Stats.) and that the pension rate is also authorized by a *special* law, being chapter 4520, passed at the same session of the legislature when Chap. 4515 was passed, *viz*: A. D. 1897, and that this latter act being a general one, and not specially repealing either of

the other two, and not being necessarily repugnant to either of them, and not specially embracing in its terms a tax for the board of health fund and a tax for pensions, these special acts are in force, and authorize the levy of the rate for the board of health fund, and the levy for the pension fund. Section 1, Chap. 4520, is as follows: "Section 1. That there shall be levied upon the real and personal property in the different counties for the years 1897 and 1898 a tax of a half mill, the proceeds thereof to be devoted to the payment of pensions."

The law applicable to the questions here involved is thus stated in Endlich on the Interpretation of Statutes, Sec. 223: "It is but a particular application of the general presumption against an intention to alter the law beyond the immediate scope of the statute, to say that a general act is to be construed as not repealing a particular one, that is, one directed towards a special object, or a special class of objects. A general later (affirmative) law does not abrogate an earlier special one by *mere implication*. *Generalia specialibus non derogant;* the law does not allow the exposition to revoke or alter, by construction of general words, any particular statute, where the words (or the two acts, as compared with each other, are not so glaringly repugnant and irreconcilable as to indicate a legislative intent to repeal), but may have their proper operation without it. It is usually presumed to have only general cases in view, and not particular cases which have been already otherwise provided for by the special act, or, what is the same thing, by a local custom. Having already given its attention to the particular subject and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment, unless that intention is manifested in

S. C. 24

explicit language, or there be something which shows that the attention of the legislature had been turned to the special act, and that the general one was intended to embrace the special cases within the previous one; or some thing in the nature of the general one making it unlikely that an exception was intended as regards the special act. The general statute is read as silently excluding from its operation the cases which have been provided for by the special one * *· * . The fact that the general act contains a clause repealing acts inconsistent with it does not diminish the force of this rule of construction."

These principles of statutory construction have been recognized and applied in this State in the case of Luke v. State, 5 Fla. 185; in Mitchell v. Duncan, 7 Fla. 13; Doggett v. Walter, 15 Fla. 355, and other cases. Guided by them we can not say that in enacting the general law (section 1, Chap. 4516, laws of 1897) the legislature intended thereby to abrogate other special acts providing special rates of taxation for special purposes. The mere fact·that in the general appropriation statute of the same year (Chapter 4518, 1897), designating the sums appropriated for the payment of the expenses of the State government for six months from July 1st to December 31st, 1897, the sum of $32,000 is appropriated for pensions, does not show a clear or explicit purpose to abrogate the special rate for pensions, or to embrace it in the rate of three and one-half mills for the current expenses of the State provided for in Section 1, Chapter 4516, laws 1897. The practical construction of this provision, as shown by the reports of the Treasurer, is that the $32,000 appropriated for pensions by this act was taken from the general revenue and that the special rate levied by Chapter 4520 was kept apart from the general revenue, and treated as a special fund.

Section 784 Revised Statutes is as follows: "There shall be annually levied and collected upon the assessable property of the State, a tax of not more than half a mill, the revenue derived from which assessment and collection shall constitute *a special fund* to be used for public health purposes of the State." It is contended that inasmuch as there is no appropriation for board of health purposes in the general appropriation law of 1897; there could be no levy for that purpose, as such a levy would violate sections 3 and 4, Article IX, of the constitution. The legislature seems to have regarded section 784 Revised Statutes as being, *ex proprio vigore,* equivalent to an appropriation law, as we can discover no appropriation in the general appropriations laws for the board of health purposes. This is the practical construction placed upon the section by the administrative officers of the State, and we think the language of the section warrants this construction, especially so, taken in connection with sec. 1 Art. XV of the constitution. No error of law appears in the rate of State taxation for 1897.

It is furthermore contended that under section 2, Chap. 4516, already quoted, the county of Jackson could not levy a special tax of two mills for fine and forfeiture purposes, and that this rate should have been included in the five mill rate permitted for county purposes. This special levy was authorized by Chap. 4526, laws of 1897. This Chapter creates a special fund for a special purpose, *viz*: for the payment of criminal prosecutions. Applying the principles of construction of statutes heretofore quoted, we do not think there is any explicit language of section 2, Chap. 4516, or anything in its nature, rendering it likely that no exception was intended as regards the special act. It would have been perfectly easy by the use of unambiguous language for the legislature to have made it

purpose plain that it intended to embrace every kind of special rate for every kind of special purpose within the five mill limit, and by so doing to have rendered inapplicable the principles of statutory construction referred to, provided no constitutional obligation was violated. These principles have been long established and are well known. We do not think the petitioner has shown error in law in the county rate of taxation.

The county levy is also attacked on the ground that the board of county commissioners did not enter at large on their minutes their "determination" of the amount of tax to be levied, as required by section 2, Chap. 4516, laws of 1897. We think that the minutes of the meeting of the board of county commissioners for October, 1897, already quoted, show a sufficient compliance with this section. We think the judgment appealed from is erroneous and should be reversed.

It is, therefore, considered, ordered and adjudged that the judgment of the Circuit Judge, dated June 6th, 1898, declaring the assessment not lawfully made upon the property of the petitioner, The Southern Land and Timber Company, a corporation, for the year 1897, in the county of Jackson, State of Florida, be and the same is hereby reversed, and the said petition ordered to be dismissed. The defendant in error to pay the costs of this appellate proceeding.