S. E. SPARKMAN, AS TAX ASSESSOR, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *ex rel.,* BANK OF YBOR CITY, *Defendant in Error.*

## Opinion filed February 15, 1916.

1. "A just valuation of all property" is not *secured* as is mandatorily required by the Constitution when the assessment valuation of some property is higher proportionately than the valuation put upon other property assessed for the same purpose.

2. In the absence of express repeals or irreconcilable repugnancy the effect of a later statute upon a former one affecting the same subject, depends upon the intent of the lawmaking power; and this is true whether the two statutes are passed at the same session or at different sessions of the legislature.

3. The intent of a statute is to be determined by a consideration of the language used, the subject-matter, the purpose designed to be accomplished and all other relevant and proper matters that may assist in ascertaining the legislative intent.

4. A general statute covering an entire subject-matter, and manifestly designed to embrace all the regulations of the subject, may supersede a former statute covering a portion only of the subject, when such is the manifest intent, even though the two are not wholly repugnant.

5. Where there is material repugnance in statutory regulations, or where there is anything from which an intent that a later act shall supersede a prior act may be fairly inferred, it will be given that effect, particularly when the later act covers a broader general subject and contains a portion of the particular provisions of the former act and adds to some portions and omits other portions of such particular provisions so as to make such particular regulations contained in the prior act conform to the purpose and policy of the later act covering a broader subject including the lesser.

6. In enacting Chapter 5596, approved June 18, 1907, the lawmaking power clearly indicated an intent that such Chapter shall supersede the previously enacted Chapter 5605, approved May 22, 1907, which covers only a portion of the subject-matter that is fully covered by the complete regulations contained in the subsequently enacted Chapter 5596 approved June 18, 1907.

7. The county commissioners have no general power in making tax assessments but only such special and limited power as is specifically conferred by statutes to secure equalization of tax values. When that power as specially conferred is exercised and final adjournment is taken, their special power as a Board of Equalization ceases particularly when as in this case the power is limited and particular and in no sense general as are other powers conferred upon the Commissioners with reference to general county matters.

Writ of Error to Circuit Court, Hillsborough County; F. M. Robles, Judge.

Affirmed.

*W. T. Martin, H. C. Gordon, Guy A. Andrews* and *T. F. West,* Attorney General, for Plaintiff in Error;

*Geo. P. Raney, J. W. Morris, Jr.* and *Wm. Hunter,* for Defendant in Error.

WHITFIELD, J.—An alternative writ of mandamus was issued by the Circuit Judge wherein it is alleged that the tax assessor of Hillsborough County in making up the assessment roll of said Hillsborough County for the year A. D. 1915, the respondent placed therein prior to July 1st of said year, an alleged assessment against the relator upon its personal property in and at a valuation of said personal property of one hundred and nine thousand dollars; that said alleged assessment in the valuation imposed as aforesaid was excessive, unjust and inequitable; that in said alleged assessment, the valuation imposed upon the said personal property of the relator was higher proportionately than the valuation imposed by the respondent in assessing the same on said roll upon any and all other real and personal property assessed in said roll, except in the other assessments on said roll of the personal property of the other banks located in Hillsborough County, and that the valuations imposed by the respondent in the assessment by him in said roll of the personal property of all banks in said Hillsborough County, including the relator, were by far greater and higher proportionately than the valuations imposed by the respondent aforesaid upon all other real and personal property assessed in said roll; that the assessment aforesaid by the respondent in said roll of the personal property of the relator violated the provisions of Section 1 of Article 9 of the Constitution of the State of Florida that

"the Legislature shall provide for a uniform and equal rate of taxation and shall prescribe such regulations as shall secure a just valuation of all property both real and personal;" that the relator, desiring to present its complaint against the assessment hereinbefore mentioned to a body authorized to hear the same and grant relief in the premises, the relator appeared before the Board of County Commissioners at the regular meeting held on the first Monday in July, A. D. 1915, to-wit, on July 5th, when the said Board had convened and was sitting as a board of equalization and petitioned the said board to equalize the assessment against the relator and for a reduction of the same, and the said Board took the said complaint and petition under consideration; that on July 6th, 7th and 8th, A. D. 1915, the said Board continued its sittings as a board of equalization and on July 8th, 1915, by reason of the finding of the said Board that the assessment roll of said Hillsborough County for the year 1915 was incomplete, by its resolution then duly adopted allowed an extension of time for the completion of said roll, which had been presented by the respondent to the said Board for review and equalization, until, to-wit, August 4th, 1915, when the said Board on the date last mentioned reconvened as a board of equalization in pursuance of an adjournment to said last mentioned date, and at its said meeting on August 4th, 1915, the respondent having completed the said assessment roll, again presented the same to the said board for equalization and review. Whereupon the said Board by resolution adopted to that effect determined to sit for one week, or as long as should be necessary for the purpose of hearing complaints, and receiving testimony as to the value of any property, real or personal, as fixed by the said county assessor of taxes

and of reviewing, perfecting and equalizing the said assessment on August 5th, 6th and 7th, 1915, and at its said meeting on August 7th, A. D. 1915, while sitting as a board of equalization aforesaid, having heard arguments and testimony with reference to the complaint of the relator hereinbefore mentioned, and having continued to have the same under advisement, did then and there grant the said complaint of the relator and did reduce the valuation imposed by the assessor in the assessment against the personal property of the relator to the sum of seventeen thousand nine hundred dollars, all of which more fully appear by reference to a certified copy of the resolution of the said Board adopted at its said meeting and spread upon its minutes of said meeting on August 7th, 1915, which is as follows:

"WHEREAS, the various national and state banks, and trust companies in Hillsborough County, Florida, have appeared before this Board, protesting against the personal property assessment of said national and state banks and trust companies, and requested that said assessment be equalized, and that said banks and trust companies be assessed upon the same basis as other property owners in Hillsborough County, Florida, and

"WHEREAS, it appears from the facts and figures as submitted by said banks and trust companies that the personal property assessments against said banks and trust companies is unjust to said banks and trust companies, disproportionate to other assessments as against private individuals and corporations, and wholly without any basis or foundation whatsoever; now therefore, be it

"*Resolved* by the Board of County Commissioners of Hillsborough County, Florida, that the protest as made by said banks and trust companies be granted, and that

said personal property assessment against said banks and trust companies be equalized, and that said banks and trust companies be assessed upon the same basis as other property assessments in Hillsborough County, Florida; and be it

*"Further Resolved* that the assessment against the personal property ofthe various banks and trust companies in Hillsborough County, be reduced to the following figures, to-wit:

| | |
|---|---|
| First National Bank of Tampa | $70,800.00 |
| Citizens Bank & Trust Company | 25,000.00 |
| Exchange National Bank of Tampa | 47,900.00 |
| American National Bank of Tampa | 34,400.00 |
| First Savings & Trust Company of Tampa | 44,400.00 |
| Bank of Commerce of Tampa | 9,200.00 |
| Bank of Ybor City, Ybor City | 17,900.00 |
| Latin-American Bank, Ybor City | 5,300.00 |
| Bank of West Tampa, West Tampa | 3,500.00 |
| Hillsborough State Bank of Plant City | 5,460.00 |
| Bank of Plant City, Plant City | 5,400.00 |
| First National Bank of Plant City | 4,400.00 |

"Passed by the Board of County Commissioners of Hillsborough County, Florida, on this 7th day of August, A. D. 1915;" that in pursuance of the said determination and resolution of the Board, the respondent did upon said assessment roll change the valuations as fixed by him in the several assessments referred to in the said resolution, including the assessment against the relator upon its personal property, from the valuations originally imposed by said assessor to the several amounts to which the same were reduced by the said Board as set forth in said resolution; that said Board continued its

sittings as a board of equalization aforesaid on August 9th, 10th and 11th in pursuance of its adjournments to that effect, and having on August 11th, 1915, concluded the review and equalization of said tax assessment roll as presented by the respondent, it thereupon finally adjourned as a board of equalization and review, as will more fully appear by the following entry in the minutes of said Board at its meeting on August 11th, 1915, to-wit: "The Board having concluded review and equalization of the tax roll as presented by the assessor, adjourned on motion as a board of equalization and review." That the resolution and determination of the Board of County Commissioners hereinbefore mentioned granting the said complaint and petition of the relator and reducing the valuation in the assessment of its personal property as hereinbefore alleged and the said resolution continued to remain and was in full force and effect when the said Board of County Commissioners adjourned as a board of equalization and review as above stated, and had not then been reconsidered, altered or in any wise disturbed; that the respondent at no time required or requested the relator or any person in its behalf to give in the amount or list of its personal property for the assessment thereof upon the tax roll of the year 1915, nor required or requested the relator or any person in its behalf to make oath before the respondent or any other person to the amount or list of its personal property, nor did the relator or any person on its behalf at any time refuse to give in the amount or list of its personal property to the respondent nor to take oath to any amount or list of its personal property.

## III.

That the Board did not at any of the meetings referred to in the preceding paragraph, nor at any other time, increase or order increased the value of any real estate or personal property as fixed by the county assessor of taxes of said Hillsborough County upon the tax assessment roll for the year 1915; that after the adjournment by the Board of County Commissioners of Hillsborough County, Florida, as a board of equalization on August 11th, 1915, as stated, no complaints were made or submitted in person or otherwise to the said Board from the owners or agents of any real estate or personal property assessed upon the assessment roll of said county for the year 1915 with reference to any assessment appearing upon the said roll; that by reason of the facts stated in this paragraph, the Board after their said adjournment on August 11th, 1915, as a board of equalization, as stated in preceding paragraph number two, were without any authority, jurisdiction or power to either change or alter any assessments or valuations of property appearing upon said assessment roll of said county, nor to reconsider, alter or disturb their said action taken while sitting as a board of equalization in granting the complaint and petition of the relator hereinbefore mentioned and fully set forth.

## IV.

That the Board met in regular session on the first Monday in September, 1915, to-wit, September 6th; that the purpose of the said meeting as stated in the minutes of the said board was as follows, to-wit: "This meeting

held for the purpose of hearing complaints of property owners, both real and personal, the valuations of which have been changed;" that no owners or agents of any property assessed on said assessment roll in person or otherwise made or submitted to the said Board any complaints of any property assessed upon said roll, without the same there was no action to be taken by the Board with reference to the said assessment roll, and no action was taken, and thereupon the said Board adjourned *sine die* and the said Board did not undertake to adjourn to any future date its sitting as a board of equalization and review or to hear complaints touching the said assessment roll.

## V.

That the Board illegally and without authority of law at a meeting of said Board did on September 7th, 1915, undertake to rescind and annul its previous action while sitting as a board of equalization and review granting the complaint and petition of the relator hereinabove mentioned and set forth, and in pursuance whereof the respondent had reduced upon the assessment roll of said county for the year 1915 the value of the personal property of the relator to the sum of seventeen thousand nine hundred dollars to which the same had been reduced by the said board, and to annul the action of the said board with reference to the assessments equalized and reduced in any by the resolution hereinbefore mentioned by adopting at its said meeting of September 17th, 1915, a resolution in the words and figures following, to-wit: "Com'r J. M. Jackson moved that a former resolution passed by this Board lowering the personal tax assessment against the banks and trust companies be rescinded.  Motion was

seconded by Com'r Moody and carried. Com'r West refrained from voting;" and that the said attempted action of the said Board last mentioned was utterly void and was insufficient to authorize the respondent to re-raise upon the assessment roll of said county the assessment of the personal property of the relator first herein mentioned to the original value imposed by said assessor of one hundred and nine thousand dollars; nevertheless, in pursuance of the said resolution mentioned in this paragraph, the respondent has again changed the valuation imposed in the assessment upon said roll of the personal property of the relator and replaced the same at the sum of one hundred and nine thousand dollars as originally fixed by him, and although relator has requested the respondent to make the said assessment to conform to the reduction granted by the Board of County Commissioners as a board of equalization in and by resolution, the respondent has utterly refused and continued to refuse so to do and has undertaken to levy a tax upon said personal property for State, county and school sub-district purposes at the rate fixed therefor upon a valuation on said personal property in the sum of one hundred and nine thousand dollars, and the said assessment roll of said Hillsborough County for the year 1915 is now in the possession, custody and control of respondent.

The respondent S. E. Sparkman, as tax assessor of Hillsborough County, Florida, was commanded forthwith to enter in the assessment roll of Hillsborough County, Florida, for the year 1915 in the assessment therein of the personal property of the said Bank of Ybor City on said roll for the year 1915, a valuation of seventeen thousand nine hundred dollars and to levy upon said roll against said property taxes for State and county and sub-

school district purposes at the rate fixed therefor upon the valuation last mentioned, or to show cause for not doing so.

The respondent demurred to the alternative writ on the following grounds:

"First. That mandamus is not the appropriate remedy.

"Second. That mandamus does not lie to meet the case alleged by the relator.

"Third. The facts recited and alleged in the alternative writ do not entitle the relator to the relief asked for or to any relief.

"Fourth. The facts alleged and recited in the alternative writ fail to show that the relator made a return of his personal property to the respondent and that the same was specified under oath.

"Fifth. The said alternative writ fails to show that the relator made a return to the respondent of his personal property under oath, and so failing he had no legal right to complain of the valuation made by the assessor of the said personal property.

"Sixth. From the facts alleged and recited in the alternative writ it appears that it was unlawful for the County Commissioners acting as a board of equalization or otherwise to lower the assessment of the personal property of the relator as assessed by the respondent.

"Seventh. From the facts and recitals set forth in the alternative writ the Board of County Commissioners was without authority to hear complaints and receive testimony in regard to the personal assessment of said relator and to lower the same from the sum of one hundred and nine thousand dollars ($109,000.00) to the sum

of seventeen thousand nine hundred dollars ($17,900.00) or to any other sum.

"Eighth.   The facts and recitals in the alternative writ show that the said Board of County Commissioners of Hillsborough County on or about the seventeenth day of September, A. D. 1915, rescinded its former action or resolution whereby the said Board undertook to reduce the personal assessment of the relator from the amount assessed by the respondent.

"Ninth.   The alternative writ contains no positive allegations or recitals showing that the respondent in assessing the personal property of the relator in any way discriminated against said relator or was in any way guilty of an abuse of his discretion and judgment in the fixing of valuations.

"Tenth.   Under the law the respondent is without power at this time to either lower or increase the valuation of the assessment of the relator's personal property.

"Eleventh.   The allegations and recitals in the said alternative writ are vague, indefinite and uncertain."

The court overruled the demurrer to the alternative writ, and the respondent having declined to file any further pleadings, a peremptory writ was awarded and obeyed, and the respondent took writ of error.

A performance of the requirements of a peremptory writ of mandamus is not a bar to an appeal from the judgment awarding the writ.   County Commissioners of Polk County v. Johnson, 21 Fla. 577.

The applicable provisions of law are as follows:

"The legislature shall provide for a uniform rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law

for municipal, educational, literary, scientific, religious or charitable purposes." §1 Art. IX Const.

Sec. 16. "It is hereby made the duty of every person owning or having the control, management, custody, direction, supervision or agency of property of whatsoever character that is subject to taxation under the laws of this State, to return the same for taxation to the County Assessor of Taxes in the proper county, or to other proper officer, on or before the first day of April of each and every year, giving the character and the true cash value of the same, as required by law, and upon failure to do so the assessment and valuation made by the assessing officer or officers shall be deemed and held to be binding upon such owner or other person or corporation interested in such property, unless complaint is made of such assessment and valuation on the day set for hearing complaints and receiving testimony as to the value of any property, real or personal, as fixed by the County Assessor of Taxes."

Sec. 17. "Every County Assessor of Taxes shall require any person giving in the amount or list of his personal property to make oath before him that the same is full and correct, and any person refusing to take such oath shall not be permitted afterwards to reduce the valuation made by such County Assessor of Taxes of his personal property for that year. The valuation of any item of property, real or personal, by the taxpayer, shall in no case prevent the County Assessor of Taxes from determining its true value, and if he shall ascertain or have reason to believe that the valuation of any item of property is too small, he shall increase the same to its true value. If any taxpayer feels aggrieved at the valuation placed upon any item of property by the County Assessor of

Taxes, he shall complain to the County Commissioners at their meeting in August, that the valuation may be properly adjusted." ·

Sec. 18.  "All personal estate liable to taxation, the value of which shall not have been specified under oath as aforesaid, shall be estimated by the County Assessor of Taxes at its true tax value, according to his best judgment and information, and his failure, neglect or refusal to make such estimate shall be a cause of suspension by the Governor."

Sec. 23.  "The County Assessors of Taxes shall complete the assessment rolls of their respective counties on or before the first Monday in July in every year, on which day such Assessors shall meet with the Board of County Commissioners at the Clerk's office of their respective counties for the purpose of hearing complaints and receiving testimony as to the value of any property, real or personal, as fixed by the County Assessor of Taxes, of perfecting, reviewing and equalizing the assessment, and may continue in session for that purpose from day to day for one week, or as long as shall be necessary. Due notice of such meeting shall be given by publication in a newspaper published in such county, or by posting a notice at the court house door, if there be no newspaper published in the county, at least fifteen days before the Board will be in session for the purpose of hearing complaints and receiving testimony as to the value of any property as fixed and assessed by the County Assessor of Taxes; Provided, That the County Commissioners of any County may, if they deem it necessary, extend the time for the completion of such assessment roll and for the purpose of revising and equalizing the assessment, a similar extension, not exceeding thirty days, giving due

notice and an opportunity to be heard as to assessment and values as hereinbefore provided. Should the Board increase the value fixed by the County Assessor of Taxes of any real estate or personal property, due notice thereof shall be given to the owner or agent of such property by publication in a newspaper published in such county, or by posting a notice at the court house door, if there be no newspaper published in the county at least fifteen days before the Board will be in session, to hear any reason that such person may desire to give why the valuation fixed by the Board shall be changed. The Board of County Commissioners shall meet on the first Monday in August or September of each year for the purpose of hearing complaints from owners or agents of any real estate or personal property the value of which shall have been fixed by the Assessor, or changed by them, and for that purpose the Board shall sit as long as it may be necessary."

Sec. 24. "The Board of County Commissioners shall have full power to equalize the assessment of the real estate or personal property in their respective counties, and for that purpose may raise or lower the value fixed by the County Assessor of Taxes on any particular piece of real estate, or item or items of personal property."

Sec. 66. "The County Assessor of Taxes and the Board of County Commissioners of each and every county in this State shall comply with the requirements of Section 23 of this Act." §§16, 17, 18, 23, 24 and 66 Chap. 5596 Acts of 1907, approved June 18, 1907.

If the County Commissioners were authorized to make the reduction in the relator's personal property assessment and were not authorized to rescind the action taken, the relator had a right to require the Tax Assessor

to make the assessment on the valuation as reduced, therefore the important inquiry is whether the reduction was duly ordered and the order not legally revoked so as to affect the respondent's legal duty when the alternative writ was issued. The alternative writ alleges that the valuation fixed by the Tax Assessor "was excessive, unjust and inequitable" and in violation of the requirements of the Constitution as to "a uniform and equal rate of taxation" and "a just valuation of all property, both real and personal," and the findings of the Commissioners when they ordered the reduction in valuation expressly state that it appears from the facts and figures as submitted that the personal property assessment of the relator bank * * * is unjust to said bank, * * * disproportionate to other assessments as against private individuals and corporations, and wholly without any basis or foundation whatsoever." "A just valuation of all property" is not *secured* as is mandatorily required by the Constitution when the assessment valuation of some property is higher proportionately than the valuation put upon other property assessed for the same purpose.

In view of the above stated allegations of the alternative writ and of the findings of the County Commissioners it may be assumed that the County Commissioners adopted the subsequent resolution of September 17th purporting to rescind the resolution "lowering the personal tax assessment against the bank," on the theory that the Commissioners had no power to reduce the valuation in the first instance.

In apparent conformity with this assumption it is argued by counsel for the plaintiff in error that the County Commissioners had no power to make the reduction, since Section 2 of Chapter 5605 approved May 22nd,

1907, amending section 526 General Statutes of 1906, should be applied in connection with the provisions .of the General Revenue Law of 1907 hereinbefore quoted, and that being applicable such section 2 of Chapter 5605 provides that "it shall be unlawful for the County Commissioners to lower the assessment of any personal property given in by the owner or assessed by the assessor, which shall not have been specified under oath," thereby making the reduction illegal since it is alleged by the relator taxpayer that it did not specify its property under oath.

Chapter 5605 claimed by the respondent to be in force is as follows:

"*An Act* To Amend Sections 525 and 526 of the General Statutes of the State of Florida, Relating to Taxation and Finance.

"*Be it Enacted by the Legislature of the State of Florida*:

Section 1. That Section 525 of the General Statutes of Florida, relating to taxation and finance, be, and the same is hereby amended so as to read as follows:

'525. Review by County Commissioners.—The Assessors shall complete the assessment rolls of their respective counties on or before the first Monday of July in every year, on which day such Assessors shall meet with the Board of County Commissioners at the Clerk's office of their respective counties for the purpose of reviewing and equalizing the assessment, and may continue in session for that purpose from day to day for one week, or as long as shall be necessary; Provided, That the County Commissioners of any county may, if they deem it necessary, extend the time for the completion of such assessment roll. Should the Board increase the value fixed by

the Assessor of any real estate or personal property, due notice thereof shall be given to the owner or agent of such property by publication in a newspaper published in such county, or by posting a notice at the court house door if there be no newspaper published in the county, at least fifteen days before the Board will be in session, to hear any reasons that such persons may desire to give why the valuation fixed by the Board shall be changed. The Board of County Commissioners shall meet on the first Monday in August of each year for the purpose of hearing complaints from the owner or agent of any real estate or personal property, the value of which shall have been fixed by the Assessor, or changed by them, and for that purpose the Board shall sit as long as may be necessary.'

Sec. 2. That Section 526 of the General Statutes of Florida, relative to taxation and finance, be, and the same is hereby amended so as to read as follows:

'526. Equalization of Amendments.—The Board of County Commissioners shall have full power to equalize the assessment of the real estate and personal property in their respective counties, and for that purpose only may raise or lower the value fixed by the Assessor on any particular piece of real estate or personal property. It shall be unlawful for the County Commissioners to lower the assessment of any personal property given in by the owner or assessed by the Assessor, which shall not have been specified under oath. The County Commissioners failing to obey this provision shall be subject to a fine of fifty dollars each, and suspension.'

Sec. 3. That all laws and parts of laws in conflict with this act be and the same are hereby repealed.

Sec. 4.   That this act shall take effect from and after its passage and approval by the Governor.

Approved May 22, 1907."

The statutes of the State enacted at a session of the legislature are not numbered or printed with reference to the date of their passage or approval.   Chapter 5605 was approved and took effect upon its approval May 22, 1907.   Chapter 5596, according to the printed copies thereof, was approved and became effective June 18, 1907. The latter is a general revenue law "relating to tax assessments and collection of revenue."   The former amended two sections of the prior general revenue law, Chapter 4322, Acts of 1895, the same being re-enacted as Sections 525 and 526 of the General Statutes of 1906.

In the absence of express repeals or irreconcilable repugnancy the effect of the latter statute upon a former one affecting the same subject, depends upon the intent of the lawmaking power; and this is true whether the two statutes are passed at the same session or at different sessions of the legislature.   The intent of a statute is to be determined by a consideration of the language used, the subject-matter, the purpose designed to be accomplished and all other relevant and proper matters that may assist in ascertaining the legislative intent.   A general statute covering an entire subject-matter, and manifestly designed to embrace all the regulations of the subject, may supersede a former statute covering a portion only of the subject, when such is the manifest intent, even though the two are not wholly repugnant.   Where there is material repugnance in statutory regulations, or where there is anything from which an intent that a later act shall supersede a prior act may be fairly inferred, it will be given that effect, particularly when the later act

covers a broader general subject and contains a portion of the particular provisions of the former act and adds to some portions and omits other portions of such particular provisions so as to make such particular regulations contained in the prior act conform to the purpose and policy of the later act covering a broader subject including the lesser.

In enacting Chapter 5596, approved June 18th, 1907, covering the broad general subject of the assessment of property and the collection of taxes including matters properly connected with such general subject, the inclusion in such Chapter of the new matter contained in Section 16 and other sections of the act, and the re-enactment of section 525 as amended with further amendment, and the re-enactment of a portion of section 526 of the General Statutes of 1906 as amended by Chapter 5605 and the omission of another portion of amended section 526, considered in connection with the policy and purpose shown by the other sections of Chapter 5596, set out herein, the legislature clearly indicated an intent that the later act shall supersede the former statute covering only a portion of the subject-matter that is fully covered by the complete regulations of the later act. This is obviously the intent when it appears that the amendment made by section one of Chapter 5605 to section 526 merely gave the County Commissioners authority to equalize the assessment values of personal property as well as real estate, and when it further appears that in considering the entire subject upon the enactment of the later general statute covering the whole matter, the amendment made to section 526 of the General Statutes of 1906 by Chapter 5605 as to power to equalize assessments of personal property was retained and the latter

portion of the section making it "unlawful for the County Commissioners to lower the assessment of any personal property given in by owner or assessed by the assessor which shall not have been specified under oath," was omitted from the latter act covering the entire subject and providing complete and in some respects new and different regulations indicating the then purpose and policy of the lawmakers. See Dees v. Smith, 55 Fla. 652, 46 South. Rep. 173; Jernigan v. Holden, 34 Fla. 530, 16 South. Rep. 413.

This case is essentially different from Lule, a Slave, v. State, 5 Fla. 185; Doggett v. Walker, 15 Fla. 355; Curry v. Lehman, 55 Fla. 847, 47 South. Rep. 18; State v. Southern Land & Timber Co., 45 Fla. 374, 33 South. Rep. 999; State v. Commissioners of Volusia Co., 28 Fla. 793, 10 South. Rep. 14, and other somewhat similar cases, where two acts were held to operate concurrently and one not being designed to supersede the other.

The two sections of Chapter 5605, approved May 22, 1907, having been in substance re-enacted with additions to one and omission from the other as sections 23 and 24 of Chapter 5596 approved June 18, 1907, along with complete regulations of the whole general subject of the assessment and collection of State and county taxes, Chapter 5605 is thereby superseded and rendered inoperative. See §526 Compiled Laws of 1914 and notes. As a result of this the provision of section 526 of the General Statutes of 1906 as amended by section 2 of Chapter 5605 approved May 22, 1907, that "it shall be unlawful for the County Commissioners to lower the assessment of any personal property given in by the owner or assessed by the assessor, which shall not have been specified under oath," is not in force since

Chapter 5596 approved June 18, 1907, took effect.   This being so the County Commissioners were authorized by section 24 of Chapter 5596 to "raise or lower the value fixed by the County Assessor of Taxes on any particular * * * item or items of personal property," including that belonging to the relator whether the relator had returned its property under oath or not, as they did by the resolution of August 7, 1915, herein quoted.   The merits of the reduction in valuation are not here for consideration.

Sections 16, 23 and 24 provide specifically for stated meetings of the County Commissioners as a Board of Equalization and for hearings; and also give power to equalize assessments of both real and personal property. The provisions and limitations of these sections have reference to the rights of taxpayers and due process of law in levying tax burdens; and if they are not substantially complied with the taxpayer is not bound by the action taken.   See Clark-Ray-Johnson Co. v. Williford, 62 Fla. 453, 56 South. Rep. 938; Starks v. Sawyer, 56 Fla. 596, 47 South. Rep. 513.

Section 27 Chapter 5596 provides that the County Commissioners shall in October examine and compare the original tax roll with the two copies required to be made, and make endorsements thereon that they are correct, the assessor being present "to correct all mistakes and inaccuracies," and that warrants annexed to one of the tax books giving to the tax collector authority to collect the taxes assessed "shall be recorded in the minutes of the Board of County Commissioners, and the County Commissioners shall not have power to change any assessment after the copies (of the tax roll) have been delivered," etc.   This latter provision manifestly relates

to "mistakes and inaccuracies" and does not give to the County Commissioners authority to raise an assessment duly lowered and fixed in equalizing all tax assessments, after the time for equalizing has passed and the County Commissioners have adjourned *sine die* at a meeting held under statutory requirement for that purpose. Such a construction in the absence of other authority would make the provision lacking in due process of law.

The County Commissioners, as appears from the allegations of the writ demurred to, adjourned *sine die* as a Board of Equalization on August 11, 1915, without *increasing* the valuations of any real estate or personal property as fixed by the Tax Assessor, and no complaints were amde with refernce to any other assessments, than those that were reduced as shown by this alternative writ, and the County Commissioners having no complaints to consider at their meeting in September, adjourned *sine die* as a Board of Equalization and review to hear complaints as to assessments. As the relator's assessment was reduced at the August meeting as the Commissioners had authority to do under the statute, and as the Board adjourned *sine die* August 11, and again on September 6, 1915, when the meetings required by the statute were held and presumably equalization was completed, the Board of County Commissioners were without authority subsequent to such completion of equalization and adjournment *sine die,* to in effect raise the relator's assessed valuations, from the amounts to which they were previously reduced, since the power to equalize valuations for taxation is special and limited and the lawmakers had made no provision for such subsequent action and provided no notice to the person whose assessment is thus raised after having been reduced and fixed

on its merits as stated in the resolution, there being no question of making the assessment speak the truth in accordance with action duly taken within the limited authority to equalize valuations subject to the statutory requirements as to time and notice with opportunity to be heard. The rights required by the relator with reference to the assessment against him by virtue of the previous action duly taken and not set aside by competent authority cannot be taken away by subsequent action of the Board that is not provided for by law, since that would be a denial of due process. See French v. Harney County, 33 Ore. 418, 54 Pac. Rep. 211; 37 Cyc. 1096.

Even if the relator had actual notice and was heard before the rescinding action was taken, this does not afford due process or render legal the action that was taken without authority of law. See Coe v. Armour Fertilizer Works, 237 U. S. 413, 35 Sup. Ct. Rep. 625.

No question of fraud or imposition or clerical misprision is presented here.

Section 23 Chapter 5596 provides for a meeting of the County Commissioners on the first Monday in August or September for the purpose of hearing complaints of valuations fixed by the Tax Assessor or changed by the Commissioners "and for that purpose the Board may sit as long as it may be necessary." But in this case the Board had sat as long as it deemed necessary, and there being no complaints, the Board adjourned *sine die* as a Board of equalization. The County Commissioners have no general power in making tax assessments but only such special and limited power as is specifically conferred by statutes to secure equalization of tax values. When that power as specially conferred is exercised and final adjournment is taken, their special power as a Board

of equalization ceases particularly when as in this case the power is limited and particular and in no sense general as are other powers conferred upon the Commissioners with reference to general county matters. Such cases as Parker v. Evening News Publishing Co., 54 Fla. 544, 45 South. Rep. 309; Bowden v. Ricker, 70 Fla. 154, 69 South. Rep. 694, are not controlling here. In this case it is alleged and admitted by demurrer that there were no complaints for the equalizing Board to consider at its statutory meting in September and that the Board adjourned *sine die* and did not undertake to adjourn its sittings to any further day as a Board of Equalization and review or to hear complaints touching the said assessment roll. The special and limited power to equalize assessments having been exercised and the duty completed the statute does not either expressly or impliedly give authority to have a subsequent meeting to change assessments fixed in due course of law.

Affirmed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and ELLIS, JJ., concur.