**UNITED STATES of America, Plaintiff,**

v.

**131.32 ACRES OF LAND, MORE OR LESS, IN the COUNTY OF DADE, STATE OF FLORIDA, et al., and Unknown Owners, 114.88 Acres of Land, etc., et al., 145.00 Acres of Land, etc., et al., 89.52 Acres of Land, etc., et al., Defendants.**

**Nos. 85–2721 to 85–2723 and 85–2725–CIV.**

United States District Court, S.D. Florida, Miami Division.

Nov. 17, 1986.

Thomas Carolan, Washington, D.C., Peter Koste, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Arnold Wiener, Miami, Fla., for defendants.

**MEMORANDUM OPINION AND ORDER DETERMINING LEGAL ISSUE**

SPELLMAN, District Judge.

### BACKGROUND

In July, 1985, the United States of America filed a Complaint in Condemnation against certain tracts of land located in Dade County, Florida. These lands, known as the "Ragged Keys," are the northernmost islands of the Florida Keys and consist of a chain of upland properties along with the submerged land surrounding the islands. The United States is condemning these lands for the public's benefit and enjoyment as part of the Biscayne National Monument, 16 U.S.C.A. Section 410gg (West Supp.1986). The specific lands involved in this litigation are the submerged lands lying landward of established bulkheads. The Board of Trustees of the Internal Improvement Trust Fund, State of Florida, conveyed these lands to private owners

and waived any rights to appear in this action.[1]

This case and others were referred to the United States Land Commission for the Southern District of Florida for a determination of the issue of just compensation.[2] This Court, however, needed to resolve preliminary legal issues prior to the trial before the Commission. Specifically, a critical issue in assessing the value of property for the purposes of awarding just compensation is determining the economically viable use to which the property can be put. *See U.S. v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 459, 88 L.Ed.2d 419 (1985).

In this case the Government contends that the lands in question have little or no economic use value because they are subject to extensive regulation under the Biscayne Bay Aquatic Preserve Act, Fla.Stat. Section 258.397 (1985). Naturally, the private landowners reject this view. They assert that although the Government may subject the land to condemnation, as privately held property it nonetheless retains a significant economic use value. Their position is that the lands are exempt from the regulations imposed by the Biscayne Bay Aquatic Preserve Act by virtue of the subsequently enacted Florida Aquatic Preserve Act, Fla.Stat. Section 258.39 (1985).

After reviewing the statutes and after hearing oral argument in this case, this Court is of the opinion that the Government's position must fail.

## THE STATUTES

In 1974, the Florida Legislature created the Biscayne Bay Aquatic Preserve, Fla. Stat. Section 258.165 (1975), since renumbered as Fla.Stat. Section 258.397 (1985). In 1975, the Legislature enacted the Florida Aquatic Preserve Act, Fla.Stat. Section

258.35–.46 (1985). Section 258.39 of the Florida Aquatic Preserve Act (hereinafter "FAPA") states in pertinent part:

> The submerged lands included within the boundaries of ... Dade ... Count[y], as hereinafter described, *with the exception of privately held submerged lands lying landward of established bulkheads ...* are hereby declared to be aquatic preserves. Such aquatic preserve areas include: ...
>
> . . . .
>
> ... (27) Pinellas County Aquatic Preserve, as established by chapter 72–663, Laws of Florida; Boca Ciega Aquatic Preserve, as established by s. 258.16; and the Biscayne Bay Aquatic Preserve, as established by s. 258.396. If any provision of this act is in conflict with an aquatic preserve established by s. 258.16, chapter 72–663, Laws of Florida, or s. 258.397, the stronger provision for the maintenance of the aquatic preserve shall prevail....
>
> . . . .
>
> ... *Any and all submerged lands theretofore conveyed by the Trustees of the Internal Improvement Trust Fund and any and all uplands now in private possession are specifically exempted from this dedication.*

Fla.Stat. § 258.397 (1985) (emphasis added). Section 258.397(2)(b) of the Biscayne Bay Aquatic Preserve (hereinafter "BBAP") states in pertinent part:

> (b) The preserve established by this section shall include the submerged bottom lands and the water column upon such lands, as well as all privately owned islands, within the boundaries of the preserve....

Fla.Stat. § 258.397(2)(b) (1985).

The Government relies on the language in subsection (27), *supra*, of the FAPA

---

**1.** The deeds conveying these lands are too long to be included as an appendix to this opinion. The deeds are: No. 20804, dated November 30, 1954; No. 23809A (521–13), dated September 6, 1968; No. 21306, dated October 11, 1957; No. 21307–B, dated July 14, 1959; No. 21307–A, dated February 9, 1959; No. 21308, dated July 11, 1956; No. 21309, dated July 11, 1956; No. 23215 (516–13), dated October 24, 1962; No. 23635 (519–13), dated March 11, 1964; No. 3,310, dat-

ed August 20, 1902; No. 23846 (518–13), dated July 2, 1970. Thus, all lands were conveyed prior to the enactment of any act referred to in this opinion.

**2.** These cases were referred to the Land Commission in an Order entered by Judge King, Chief Judge of the United States District Court for the Southern District of Florida, on October 3, 1985.

which states that "[i]f any provision of this act is in conflict with an aquatic preserve established by s. 258.16, chapter 72–663, Laws of Florida, or s. 258.397, the stronger provision for the *maintenance* of the aquatic preserve shall prevail." Fla.Stat. § 258.39(27) (1985) (emphasis added). The Government asserts that this "conflict provision" requires that the lands involved in this litigation be subject to BBAP regulations, since there is a conflict on the face of the two statutes, to-wit: the BBAP including the lands within the boundaries of the preserve while the FAPA exempts them entirely.

Using this provision, the Government asserts that "the stronger provision for the maintenance of the preserve" is the language in the BBAP which includes the land within its boundaries. The landowners do not dispute that the provision resolves conflicts between the two statutes where maintenance is at issue, but submits to this Court that maintenance is not at issue since there is a threshold question regarding the definition of boundaries before the conflict provision takes effect.

## DISCUSSION

This Court is not without guidance in interpreting the relationship between the two statutes. The First District Court of Appeal for the State of Florida was posed with a similar question in the case of *Berkley v. State of Florida, Department of Environmental Regulation*, 358 So.2d 552 (Fla. 1st DCA 1977). In that case, Berkley, a private owner of submerged lands located within the boundaries of the BBAP, applied to the Department of Environmental Regulation (hereinafter "Department") for a permit to construct a seawall and to fill his lands. As in the instant case, Berkley's properties were located within the defined boundaries of the BBAP. In denying Berkley's application for a permit, the Department found the BBAP regulations applicable to his privately held land. 358 So.2d at 553. The district court quashed the Department's order and directed it to grant Berkley's application. 358 So.2d at 556. Essential to the court's holding was

an interpretation of the FAPA as it relates to the BBAP.

The court noted that the FAPA was a comprehensive act that incorporated previously existing aquatic preserves. 358 So.2d at 553. Specifically, the court pointed out that section 258.39(27) expressly "includes 'the [BBAP], as established by s. 258.165' as being within the purview of the [FAPA]." *Id.* The court then stated the rule of statutory construction to apply:

Where there is material repugnance in statutory regulations or where there is anything from which an intent that a later act shall supercede a prior act may fairly be inferred, it will be given that effect, particularly when the later act covers a broader general subject and contains a portion of the particular provisions of the former act, and adds to some portions and omits other portions of such particular provisions so as to make such particular regulations contained in the prior act conform to the purpose and policy of the later act, *covering a broader subject, including the lesser.* (emphasis supplied)

358 So.2d at 554 (quoting *Sparkman v. State,* 71 So. 34, 39 (Fla.1916)).

The BBAP, by definition, includes within its boundaries the property involved in this litigation. The FAPA, however, "established aquatic preserves among numerous areas of Florida's extensive sea-shorelines. Thus, the later act is a subsequent *general act* that specifically ... excluded [privately held submerged lands lying landward of established bulkheads] from the [BBAP]." *Id.*

Indeed, the FAPA begins by declaring that "[t]he submerged lands included within the boundaries of ... Dade ... Count[y], as hereinafter described, *with the exception of privately held submerged lands lying landward of established bulkheads* ... are hereby declared to be aquatic preserves." Fla.Stat. Section 258.39 (1985) (emphasis added). As noted, the BBAP is expressly included within the FAPA as one such aquatic preserve by virtue of the first sentence of subsection (27). Moreover, this case is more persuasive than *Berkley* when

one considers, as indicated by the closing sentence to the FAPA, that the legislature took pains to reiterate its intention to exclude such lands from the boundaries of any aquatic preserve incorporated into the FAPA. That sentence states that "[a]ny and all submerged lands *theretofore conveyed by the Trustees of the Internal Improvement Trust Fund ... are specifically exempted from this dedication.*" Fla. Stat. § 258.39 (1985) (emphasis added).

There is no question that the lands involved in this litigation are 'privately held submerged lands lying landward of established bulkheads' which have been 'theretofore conveyed by the Trustees of the Internal Improvement Trust Fund.' Therefore, this Court is of the opinion that they simply are not within the boundaries of the BBAP since the FAPA, as a subsequent general act, exempts them.

The fact that subsequent to *Berkley* the legislature amended the conflict provision in subsection (27) to include s. 258.397 does not alter this conclusion.

First, the legislative history to this provision indicates that the conflict which exists on the face of the two statutes could never have been contemplated by the legislature as a conflict to be resolved by resort to this provision. As first enacted the provision referred only to Pinellas County Aquatic Preserve and Boca Ciega Aquatic Preserve. *See* 1975 Fla.Laws Chapter 75–172. The Legislature inserted the statutory reference to § 258.165 (since renumbered) into subsection (27) in 1976. *See* 1976 Fla.Laws Chapter 76–109. Neither Pinellas County Aquatic Preserve nor Boca Ciega Aquatic Preserve, by definition, have included privately held submerged lands located within established bulkhead lines. *See* 1972 Fla. Laws Chapter 72–663; 1969 Fla.Laws Chapter 69–342, codified as amended at Fla.Stat. § 258.396 (1985). Thus, the legislature could not have intended the conflict provision to be controlling with regard to whether the boundaries of these preserves include privately held submerged lands located within established bulkheads.

Second, and implied within the first reason, is that there is a threshold question regarding the definition of the boundaries of any of the three preserves mentioned in subsection (27) before its conflict provision comes into play. As indicated already, traditional notions of statutory construction compel this Court to exempt such lands entirely from the boundaries of the BBAP under the provisions of the FAPA. Moreover, § 258.397(2)(b) itself indicates that the definition of boundaries is a threshold question, since that subsection states that "[t]he preserve established by this section shall include the submerged bottom lands ... *within the boundaries of the preserve.*" Fla.Stat. § 258.397(2)(b) (1985) (emphasis added). Obviously the boundaries of the preserve must be established first.

In light of the foregoing, it is hereby,

ORDERED AND ADJUDGED that the submerged lands involved in this litigation are not subject to the regulations of the Biscayne Bay Aquatic Preserve.[3]

---

**3.** In accordance with this opinion, Plaintiff's request for an evidentiary hearing is DENIED. This Court is of the opinion that any issues arising from the appraisals of the properties in this case are not beyond the ability of the Land Commission to resolve.